# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SCOTT JOHNSON, as personal representative of
the estate of GRACIELA CANO a/k/a GRACE
LEE BOGEY, deceased, and LORENA TORREZ,

       Plaintiffs,

vs.                                                                No. CIV 02-1239 JB/KBM

ANNE HOLMES, BONNIE VEHSTEDT,
KAREN ZARATE, LYDIA R. SAENZ, SONIA
PEREZ, VIRGINIA VILLAREAL, VIVIAN ENCINIAS,
GINGER BOWMAN, DENISE H. NARVAEZ,
JANE DOE, and JOHN DOE in their individual
capacities, the NEW MEXICO CHILDREN, YOUTH
AND FAMILIES DEPARTMENT, TERRY BOGEY,
a/k/a TERI BOGEY, and VERONICA BOGEY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant CYFD's Motion for Summary

Judgment as to Count IX of Amended Complaint, filed January 9, 2004 (Doc. 143).  The primary

issue is whether relinquishment-of-parental-rights and consent-to-adoption forms and documents can

constitute a valid written contract.  Because CYFD has not demonstrated that the documents Torrez

signed do not constitute a valid written contract, and because there are genuine issues of material fact

whether CYFD breached the alleged contract, the Court will deny CYFD's motion for summary

judgment on Count IX.

## FACTUAL BACKGROUND

The Court is familiar with the general factual background from which this case arises.  The

facts potentially relevant to Plaintiff Lorena Torrez' alleged breach-of-contract claim are voluminous

and stated at various places in the record.  The pleadings and documents in the record, however, show that the following facts are undisputed.

In Count IX of the Plaintiffs' Amended Complaint, Torrez alleges that she and CYFD entered into a valid and binding contract whereby Torrez agreed to relinquish her parental rights to Grace, and CYFD agreed to care for Grace and to find her a safe adoptive family that would protect her, and provide for her care and needs.  <u>See</u> Plaintiff Torrez's Amended Complaint for Civil Rights Violations, Breach of Contract, Tort Claims and Damages ("Complaint") ¶ 85, at 16, filed September 4, 2002 in the Second Judicial District Court, County of Bernalillo, State of New Mexico and attached to the Notice of Removal, filed October 2, 2002 (Doc. 1).  The alleged contract that is the basis of Torrez' Count IX consists of three related, court-filed documents:  (i) a Relinquishment of Parental Rights and Consent to Adoption form; (ii) the Judicial Certification and Acceptance of Relinquishment; and (iii) the Relinquishment Counseling Narrative.  <u>See id.</u> ¶¶ 13, 85, at 3, 16; Plaintiffs' Response in Opposition to Defendant CYFD's Motion to Dismiss or for a More Definite Statement at 5, filed November 8, 2002 (Doc. 20)(stating that these documents constitute "the contract on which Plaintiff Torrez relies[.]").  All three documents were filed in Cause No. JQ-98-03, State of New Mexico, Third Judicial District Children's Court.  CYFD is a "governmental entity" within the meaning of NMSA 1978, §37-1-23A.  <u>See</u> Complaint ¶ 4, at 2.

On January 6, 1998, CYFD initiated Cause No. JQ-98-03 by filing a Neglect and Abuse Petition ("Petition") against Plaintiff Lorena Torrez and two other respondents -- the fathers of two of Torrez' three children.[1]  While not material to this motion, as background, the Court notes some

---

[1] Torrez argues that the factual allegations in the Neglect and Abuse Petition, including the allegation that Torrez' children were "neglected and/or abused," are inadmissible hearsay under 801(c) of the Federal Rules of Evidence.  Torrez argues that the Court may not consider the

undisputed facts to provide meaningful context for CYFD's motion.  At the time CYFD filed the

Petition, Torrez was almost sixteen years old and had three children:  Stephanie Torrez, Amanda

Hernandez, and Graciela Cano.  See Affidavit of Lydia R. Saenz ¶ 2, at 5 (executed January 6,

1998)(attached to the Petition).  Torrez had given birth to her eldest child, Stephanie, when she was

twelve years old.  See Saenz Aff. ¶ 2, at 5. At the time CYFD filed the Petition, Torrez' youngest

child, Graciela, the subject of this action, was almost six months old.  See id.  Graciela was born with

spinabifa, sacral myelmeningoceal, VT shunt, and a neurogenic bladder.  See id. ¶ 14, at 3.

Again, while not material to this motion, the Court notes that CYFD alleged in the Petition,

among other things, that Torrez had neglected or abused her three children and that CYFD had taken

emergency custody of the children after a law enforcement officer had removed them from Torrez'

home for their safety.  See Petition at 1-2.  The Court also notes that, on January 6, 1998, the day

that CYFD filed the Petition and initiated state court Cause No. JQ-98-03, the Honorable Thomas

G. Cornish, District Judge, made findings of fact that, among other things:  (i) "[p]robable cause

exists to believe, that [Plaintiff's] children are abused and/or neglected"; (ii) "[c]ontinuation in [her]

home would be contrary to the children's welfare"; and (iii) "[i]t is necessary for the children's

protection that the children be placed in the legal custody of CYFD."  In the Matter of Stephanie

Torrez, Amanda Hernandez, and Graciela Cano, And Concerning Lorena Torrez, Eladio Hernandez,

and Jesus Cano, Respondents (In the Children's Court, Third Judicial District Court, County of Dona

---

Petition's allegations when deciding this motion for summary judgment.  See Pastran v. K-Mart
Corp., 210 F.3d 1201, 1203 n.1 (10th Cir. 2000)("When reviewing an order granting summary
judgment, we may only consider admissible evidence."); Starr v. Pearle Vision, Inc., 54 F.3d 1548,
1555 (10th Cir. 1995)(holding that a district court may not consider hearsay evidence in deposition
submitted to defeat summary judgment); Fed. R. Civ. P. 56(e).  For purposes of this motion, the
Court need not consider the Petition's allegations or assume them to be true.  Hence, the Court need
not decide whether the documents are admissible, even for a limited purpose.

Ana, State of New Mexico, filed Jan. 6, 1998).  Ex Parte Custody Order at 1-2.  On CYFD's motion, the state court appointed an attorney to represent Torrez, a second attorney to serve as Torrez' guardian ad litem, and a third attorney to serve as the children's guardian ad litem.  See id., Order Appointing Attorney for Respondent (filed February 11, 1998); id., Order for Guardian Ad Litem (Torrez (filed February 11, 1998)); id., Order for Guardian Ad Litem (Torrez' children (filed February 11, 1998)).

Both of Torrez' attorneys continued to represent Torrez in Cause No. JQ-98-03 until May 13, 1999, when the Court dismissed the proceedings on CYFD's motion.  See id., Order of Dismissal of Respondents Lorena Torrez and Eladio Hernandez, and the children Stephanie Torrez and Amanda Hernandez ¶ 5, at 2 (filed May 13, 1999).  Thus, both attorneys were representing Torrez at the time she entered into the alleged contract which is the basis of Torrez' Count IX.  Neither Torrez' attorney nor her guardian ad litem signed the contract at issue, and CYFD has not presented any evidence that either of them reviewed the contract.

Again, while not material to this motion, the Court notes that, on March 6, 1998, following an adjudicatory hearing in Cause No. JQ-98-03 at which counsel represented Torrez, State District Judge Cornish entered judgment, and made findings that Torrez' children were "neglected" and that CYFD should continue to have physical and legal custody over Stephanie, Amanda, and Graciela.  See id. Judgment and Disposition ¶ 3, 6, at 2 (filed March 6, 1998).  And again, while not material to this motion, the Court notes that, on April 24, 1998, following an initial judicial review hearing in Cause No. JQ-98-03, in which counsel represented Torrez, Judge Cornish found that CYFD custody was in the children's best interests and ordered that CYFD should continue to have custody of Torrez' children.  See id., Judicial Review Order ¶ 6, at 2 (filed April 24, 1998).  Finally, while not

material to this motion for summary judgment, the Court notes that, on October 8, 1998, following a permanency hearing in Cause No. JQ-98-03 at which counsel and a guardian ad litem represented counsel, Judge Cornish rejected the return of the children to Torrez' custody and ordered that CYFD should continue to have custody of Torrez' three children, including Graciela. <u>See id.</u>, Permanency Hearing Order ¶ 6, at 2 (filed Oct. 8, 1998).

On March 15, 1999, Torrez appeared before Judge Cornish in Cause No. JQ-98-03 to relinquish all of her parental rights to her youngest child, Graciela Cano, and to allow CYFD to place Graciela for adoption pursuant to the New Mexico Adoption Act. <u>See id.</u>, Relinquishment of Parental Rights and Consent to Adoption (filed March 15, 1999). The state court made a finding that the relinquishment of parental rights was in Graciela's best interests. <u>See id.</u>, Judicial Certification and Acceptance of Relinquishment ¶ 3, at 5 (attached to the Relinquishment of Parental Rights and Consent to Adoption). In addition, the state court certified that: (i) it had explained to Torrez, and that Torrez had understood the terms and consequences, of the relinquishment of parental rights and consent to adoption; and (ii) Torrez had signed the documents in the state court's presence and with the court's approval and acceptance. <u>See id.</u> at 5. The state court attached a copy of the executed Relinquishment Counseling Narrative, which NMSA 1978, §32A-5-22 requires, to the documents. <u>See id.</u>, Relinquishment Counseling Narrative (attached to the Relinquishment of Parental Rights and Consent to Adoption).

In the documents that constitute the alleged formal contract, Torrez made the following statement under oath to the state court: "I am fully informed and give this relinquishment of my own free will and desire and not as a result of any force or threats or of any premises or conditions apart from those set out in these documents." <u>Id.</u>, Relinquishment of Parental Rights and Consent to

-5-

Adoption ¶ 19, at 3.   The Relinquishing Counseling Narrative is to the same effect: Torrez'
relinquishment of parental rights was not a result of any force, threats, promises, or conditions.   See
id., Relinquishment Counseling Narrative.   Further, in the documents that constitute the alleged
formal contract, CYFD's express obligations included:   "I [Torrez] understand that [CYFD] will
assume the responsibility of caring for [Graciela Cano], and will make every reasonable effort to
select an adoptive home for said child, and place said child for adoption.   I consent to the adoption
of [Graciela Cano]."   Id., Relinquishment of Parental Rights and Consent to Adoption ¶ 6, at 3.

Torrez contends that CYFD, by and through its employees, failed to make reasonable efforts
to locate prospective adoptive homes for Grace.   See Report of Tom Rothfeld, M.D. at 2 (prepared
February 1, 2004).   Torrez also alleges that CYFD recognized or should have recognized early in
Grace's placement with Veronica Bogey that she could not adequately care for Grace, but failed to
intervene.   See id.   Torrez further alleges that CYFD learned of credible allegations that Veronica
Bogey was abusing Grace, but failed to investigate the abuse or otherwise protect Grace from
continued abuse.   See id.

Torrez also contends that CYFD did not conduct any background investigation of Defendant
Terry Bogey despite its knowledge that Terry would be one of Grace's primary care providers after
the state court finalized the adoption.   See Running Narrative, entries of February 3, 2000 and March
15, 2000.   Moreover, Terry Bogey presented a threat to Grace's well-being and safety, and,
ultimately, he was convicted of felony child abuse of Grace.   See State of New Mexico v. Teri Bogey,
No. CR 02-197, Plea and Disposition Agreement (5th Judicial District Court, County of Chaves,
State of New Mexico, filed August 12, 2003).   Torrez also alleges that CYFD did not properly
monitor or supervise Grace in the Bogey home before the state court finalized the adoption, even

after they learned of the allegations of abuse.  <u>See</u> Deposition of Sonia Perez Sanchez at 35:8 - 36:11,

51:3 - 52:18 (taken June 6, 2003)(stating that Sanchez did not conduct monthly home visits and

conducted the first home visit five months after Graciela's initial placement in the Bogey home);

Deposition of Virginia Villareal at 22:8 - 23:4 (taken June 6, 2003)(stating Villareal did not make any

home visits).

     Torrez further contends that CYFD misrepresented Veronica Bogey's ability to care for Grace

to the state children's court.  <u>See</u> <u>In the Matter of the Adoption of a Minor Child</u>, Adoption Consent

(Fifth Judicial District Court)(signed by Villareal on March 22, 2000, the same day that Janie Mealand

reported allegations of abuse to Sanchez); <u>id.</u>, Post Placement Court Report, signed by Villareal, filed

June 6, 2000 (does not mention report of abuse or describe any investigation into abuse).  On May

13, 1999, on CYFD's motion and after a hearing in Cause No. JQ-98-03, Judge Cornish agreed with

CYFD and found that it was in the best interests of Torrez' two older children, Stephanie and

Amanda, that CYFD return them to Torrez' sole custody; the Court so ordered.  <u>See</u> <u>id.</u>, Order of

Dismissal of Respondents Lorena Torrez and Eladio Hernandez, and the children Stephanie Torrez

and Amanda Hernandez (filed May 13, 1999).  As a result of these alleged CYFD actions and

omissions, Veronica Bogey was able to adopt Grace on or about July 31, 2000, and murder her on

or about September 2, 2000.  <u>See</u> Complaint ¶ 24, at 5;  <u>In the Matter of the Adoption Petition of</u>

<u>Veronica Bogey</u>, Decree of Adoption (filed July 31, 2000); Critical Care Records (approximately

September 2, 2000; Veronica Bogey took Grace to the Emergency Room on September 2, 2000);

Certificate of Death (signed September 10, 2000; date of death September 2, 2000); Autopsy Report

at 4-5 (Report issued September 15, 2000).  The Court ordered Grace be re-named.  <u>See</u> Decree of

Adoption ¶ 19, at 3.  The state court decreed that Veronica Bogey and Grace Lee Bogey had the

same legal relation as if they were biological parent and child.  See id. at 3.  Torrez filed this breach-of-contract action on September 4, 2002, about three-and-a-half years after she executed the relinquishment of parental rights and consent to adoption documents.

## PROCEDURAL BACKGROUND

Count IX pleads a state-law, breach-of-contract claim by Torrez against CYFD.  Plaintiff Scott Johnson does not bring this Count IX.  Based on the Court's oral ruling at the November 7, 2003 hearing, Count IX is the sole remaining claim against CYFD.

Torrez previously dismissed Count IX against the Individual Defendants whom the Plaintiffs originally brought Count IX.  See id., Stipulation of Dismissal (entered January 31, 2003)(Doc. No. 42).  CYFD moves, under rule 56 and local rule 7.5(a), for the Court to enter summary judgment in its favor as to Count IX.  See Fed. R. Civ. P. 56; D.N.M. LR-Civ. 7.5(a).

## STANDARDS FOR DECIDING MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995).  "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party."  Id.

On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakenly favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

For the purposes of summary judgment, the court will assume the evidence of the non-moving party to be true, will resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  If "the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff," the court should deny summary judgment.  MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991).

The movant for summary judgment bears the burden of "showing an absence of a genuine issue of material fact."  Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995).  If the movant meets this initial burden, "[t]he burden then shifts to the nonmovant to produce evidence creating a genuine issue of material fact to be resolved at trial."  Id.  See Celotex Corp. v. Catrett, 477 U.S. 321, 323-24 (1986).  The nonmoving party cannot simply show that one or more facts are disputed; the dispute must be "genuine" and must involve "material" facts.  See id.

Material facts are "facts that might affect the outcome of the suit under the governing law" and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  In addition, disputes about material facts must be "genuine" to prevent the entry of summary judgment; that is, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party."  Id.  As explained by the United States Court of Appeals for the Tenth Circuit:  "To be a 'genuine' factual dispute, there must be more than a mere scintilla of evidence . . . .  Summary judgment may be granted if the evidence [presented in opposition to summary judgment] is merely colorable or is not significantly probative."  Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)(citing Anderson v. Liberty Lobby, Inc., citations omitted).

-9-

**LEGAL ANALYSIS**

The Court cannot, by simply reviewing the documents that Torrez signed, say that they do not constitute a "valid written contract."  CYFD therefore asks the Court to make a policy decision, and find that the New Mexico Legislature did not intend the documents to be a contract and that public policy would counsel that such a contract would not be a good idea.  The Court declines to add modifying words to "valid written contract" that the New Mexico Legislature did not write into the statute and will apply traditional common law principles to determine if there is a valid written contract.

**I.     THE STATE OF NEW MEXICO HAS WAIVED SOVEREIGN IMMUNITY TO ALLOW A BREACH-OF-CONTRACT CAUSE OF ACTION FOR DAMAGES WHEN THERE IS A VALID WRITTEN CONTRACT.**

The State of New Mexico's sovereign immunity extends to breach-of-contract actions.  The New Mexico Legislature has waived the State's immunity, however, to allow a limited category of such actions to be brought against a state agency.  Section 37-1-23A NMSA states: "Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."

**A.     TORREZ MAY SUE ON A VALID WRITTEN CONTRACT.**

The sovereign immunity reflected in §37-1-23A is valid.  Cf. Hydro Conduit Corp. v. Kemble, 110 N.M. 173, 178 n.2, 793 P.2d 855, 860 n.2 (1990)("[T]he common law now recognizes a constitutionally valid statutory imposition of sovereign immunity, and such immunity must be honored by the courts where the legislature has so mandated.").  In our federalist system, the federal courts, too, must recognize a State's assertion of sovereign immunity.  See Alden v. Maine, 527 U.S. 706, 714-727 (1999).  Governmental entities in New Mexico are not, however, immune from suit in

actions based on a "valid written contract."  §37-1-23.

As a general proposition, the law recognizes three contract forms:  (i) express contracts; (ii) implied-in-fact contracts; and (iii) quasi-contracts, which are variously referred to as implied-in-law contracts, unjust enrichment, and quantum meruit.  See Hydro Conduit Corp. v. Kemble, 110 N.M. at 179, 793 P.2d at 861; Black's Law Dictionary at 321-22 (7th ed. West Group 1999)(defining "express contract" as a contract "whose terms the parties have explicitly set out" and an "implied-in-fact" as one "that the parties presumably intended [to constitute a contract], either by tacit understanding or by the assumption that it existed.").  The New Mexico appellate courts have held that §37-1-23A does not waive immunity for quasi-contracts, see Hydro Conduit Corp. v. Kemble, 110 N.M. at 179, 793 P.2d at 861, and does not waive sovereign immunity for oral contracts or oral promises, see Trujillo v. Gonzales, 106 N.M. 620, 622, 747 P.2d 915, 917 (1987).  The New Mexico courts have also held that, except for employment contracts, §37-1-23A does not waive immunity to allow breach-of-contract actions against governmental entities based on implied-in-fact contracts. See Campos De Suenos, Ltd. v. County of Bernalillo, 130 N.M. 563, 570-71, 28 P.2d 1104, 1111-1113 (Ct. App.)(construing Garcia v. Middle Rio Grande Conservancy District, 121 N.M. 728, 918 P.2d 7 (1996)), cert. denied, 130 N.M. 484, 27 P.3d. 476 (1996)).  Neither CYFD or Torrez, however,  contends that the documents are an implied-in-fact contract, for which there is no waiver of immunity.

**B.      NOTHING IN THE RELINQUISHMENT OF PARENTAL RIGHTS AND CONSENT TO ADOPTION DOCUMENTS PRECLUDE A FINDING OF A VALID WRITTEN CONTRACT.**

Torrez points to the court-approved Relinquishment of Parental Rights and Consent to Adoption forms from among the many documents filed during the course of the Children's Court

neglect and abuse proceedings against her, and argues that they are a valid written contract between herself and CYFD.  Torrez contends that this contract or contracts give her post-relinquishment rights, including the right to sue for emotional distress.

CYFD argues that the documents "do not appear to be contractual" in nature.  See CYFD's Motion at 10.  It is true that the documents do not expressly state they are a contract and are not a contract for the sale of goods, services, or real estate.  Rather, they are documents that the New Mexico Legislature in the Adoption Act required to be filed, in the form and manner prescribed by statute, in connection with a voluntary relinquishment of parental rights and consent to adoption.

The goal of statutory construction is "to determine and give effect to the intent of the legislature."  State ex rel. Klineline v. Blackhurst, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1998).  Nothing in the statute states that each court-filed document would constitute a "valid written contract" so as to waive the state's sovereign immunity and authorize the relinquishing parent's private suit for damages against the State.  See Adoption Act, Chap. 32A, Art. 5, NMSA 1978 as amended; id. §§32A-5-21, 32A-5-22.  On the other hand, the statute does not state such documents are not a valid written contract.

In §32A-5-21, the New Mexico Legislature provides that a relinquishment of parental rights must be in writing and must include certain specific provisions, such as:  (i) the date, place and time of the execution; (2) the date and place of birth of the adoptee and any names by which the adoptee has been known; . . . [and] (7) that the consent to or relinquishment for adoption cannot be withdrawn."  NMSA 1978, § 32A-5-21 (2003).  The statute does not, however, require that the writing include the provisions found within the alleged contract here.  It is these nonstatutory provisions that Torrez contends bind CYFD.

-12-

First, the alleged contract at issue required Torrez to "relinquish all [her] parental rights to said child, and surrender legal and physical custody of said child to [CYFD] so that the child may be placed for adoption with a family selected by [CYFD]."  Relinquishment of Parental Rights and Consent to Adoption ¶ 1, at 1.  Second, the contract provides CYFD "will assume the responsibility of caring for the child, Graciela Monique Cano, and will make every reasonable effort to select an adoptive home for said child, and place said child for adoption."  Id. ¶ 6, at 3.  These provisions distinguish the contract at issue from §32A-5-21's requirements.

On their face, these provisions establish a contractual relationship between CYFD and Torrez whereby Torrez agreed that, in exchange for her relinquishment of parental rights, CYFD would assume responsibility for caring for Grace.  See Relinquishment of Parental Rights ¶ 6, at 3.  These provisions, taken together, impose contractual obligations on CYFD.  "Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent."  Garcia v. Rio Grande Conservancy Dist., 1996-NMSC-029, ¶ 9, 918 P.2d 7, 10 (quoting Hartbarger v. Frank Paxton Co., 115 N.M. 665, 669 (1993)), cert. denied, 510 U.S. 1118 (1994)).

The Relinquishment of Parental Rights document satisfies these requirements.  CYFD offered her the documents that she signed as an alternative to "the option of receiving intensive, in-home, wrap around services from professionals to assist her in learning how to effectively deal with [her minor child's] problems" and financial assistance from CYFD Relinquishment Counseling Narrative at 1.  Torrez' indicated her willingness to accept the offer on February 23, 1999, during the relinquishment counseling, see id. at 2, and accepted the offer by acknowledging it in writing on March 12, 1999, see Relinquishment of Parental Rights and Consent to Adoption at 4.

-13-

Additionally, Torrez and CYFD both provided consideration to support the contract. Specifically, Torrez voluntarily relinquished her parental rights to her minor child by entering into the agreement, while CYFD promised to assume responsibility to care for Grace, to find her a safe adoptive family that would protect her, and to provide for her care and needs.[2]   Finally, there was a meeting of the minds, or mutual assent, with regard to the contract's provisions.  See Trujillo v. Glens Falls Ins. Co., 88 N.M. 279, 281, 540 P.2d 209, 211 (1975)(stating requirement of mutual consent exists where agreement is expressed plainly and explicitly enough to show what parties agreed upon).  Torrez received a relinquishment counseling several weeks in advance of her entering into the written contract with CYFD to assure that there was a mutual understanding of the terms of the relinquishment of parental rights contract.  See Relinquishment Counseling Narrative at 1.  At all relevant times, Torrez was ready and willing to perform her obligations under the contract, and she did so.  See Complaint ¶ 86, at 17.  All conditions precedent to the contract were thus satisfied.  See id. ¶ 87, at 17.  Accordingly, Torrez has presented sufficient evidence to show the existence of a valid written contract for which she may sue CYFD, a government entity.

Moreover, nothing in any New Mexico case law expressly addresses whether such statutorily required, court-filed relinquishment and adoption documents constitute a contract.  Consent decrees and settlements have contractual aspects.  The Court does not see why the fact that the legislature may require the forms or that they were filed in court removes them from the sphere of valid written contracts.  CYFD has not pointed to caselaw or to other authorities that would support such a

---

[2]  CYFD appears to suggest that Torrez provided no consideration for the alleged contract because the undisputed fact is that the state court previously had awarded legal and physical custody of the child to CYFD.  But the relinquishment of parental rights in contemplation of adoption appears to go further than giving up custody.  Compare NMSA § 32A-5-21 and § 32A-5-23 with § 32A-5-24.

-14-

blanket exception.[3]

To avoid the conclusion that the Relinquishment of Parental Rights constitutes a valid written contract, CYFD relies on the Legislature's requirement under §32A-5-21 that a relinquishment of parental rights be in writing.  As set forth above, however, CYFD included provisions in the Relinquishment contract that the statute does not require.  Also, in Moriarty Mun. Schs. v. Public Schs. Ins. Auth, 2001-NMCA-096, 34 P.3d 124, the New Mexico Court of Appeals rejected an argument similar to that which CYFD makes.  In Moriarty Mun. Schs. v. Public Schs. Ins. Auth, the defendant argued that it was immune from suit under §37-1-23, because, when it entered into an alleged contractual relationship with the plaintiff, it was acting in accordance with the Public School Insurance Authority Act's mandatory provisions.  See id. at ¶ 22, 34 P.3d at 129.  The defendant argued that the Act contained "no clear and unambiguous intent to create a contractual right . . . ."  Id. at ¶ 22, 34 P.3d at 129.  The Court of Appeals, however, found the basis for the plaintiff's assertion was not that the defendant breached a statutory duty, but that it breached a contractual duty that arose from the implementation of its statutory duties.  See id. at ¶19, 34 P.3d at 128.

In this case, CYFD was not acting pursuant to any statutory duties set forth in the Adoption Act when it agreed to care for Grace in exchange for Torrez' relinquishment of parental rights.  Because CYFD elected to include contractual provisions in the document at issue, although the Act did not require it to do so, the Court need not conduct a detailed analysis of the legislative intent behind the Adoption Act.  The more material legislative Act, to a disposition of CYFD's motion, is

---

[3] Torrez alleges that, "[a]t the time [she and CYFD] entered in to contract, the parties contemplated emotional distress damages."  Complaint ¶ 86, at 17.  Because CYFD's motion seeks dismissal of Count IX on sovereign immunity grounds, the parties have not properly or fully presented to the Court the issue of what damages may be available for a breach of contract against the state agency.  The Court does not decide that issue.

§37-1-23's passage.

The Court cannot, on the record before it, say that CYFD is entitled to judgment as a matter of law.   There may be defenses to this breach of contract action.   See NMSA 1978, §37-1-23B (providing 2-year statue of limitations).[4]   The Court need not decide those issues here.[5]   The Court, therefore, finds that CYFD has not demonstrated a valid written contract does not exist.

### C.   THE FEDERAL COURT SHOULD NOT MAKE THE POLICY DECISIONS THAT CYFD REQUESTS IN THIS CASE.

Instead, CYFD contends that the State of New Mexico has not waived sovereign immunity for causes of action predicated upon an alleged violation of court-filed, court-approved relinquishment of parental rights and consent to adoption forms.   CYFD contends that such documents do not constitute a "valid written contract" within the meaning of NMSA 1978, §37-1-23A.   CYFD argues that the judicial recognition of such a cause of action would contravene the legislative intent and policy of the New Mexico Adoption Act.

Rather than relying on basic contract law to determine whether there is a valid written

---

[4] CYFD observes that Torrez did not file her claim for breach of contract until about three-and-one half years after she executed the relinquishment of parental rights," in apparent violation of the two-year statute of limitations running from the time of accrual set forth in §37-1-23.   CYFD makes no argument, however, that the Court should grant it summary judgment on this basis.   The Court will thus not decide that possible issue.   The Court notes, however, that Torrez argues that her claim for breach of contract did not accrue until after Veronica Bogey had killed Grace, and until sometime after she learned of the concerns that were expressed about Veronica's ability to care for Grace before the state court finalized the adoption.   Torrez contends that, ultimately, the undisputed facts in that regard would demonstrate that she timely filed her breach of contract claim.

[5] On the other hand, the fact that an attorney and a guardian ad litem at the time she signed the alleged contract tend to support the validity of the contract.   See Scheidel v. Scheidel, 2000-NMCA-059, ¶ 20, 4 P.3d 670, 675 (holding that contracts which have been tainted by coercive influence in their formation are voidable by party sought to be charged with contractual obligations); N.M. U.J.I., Civil-12-838 (duress as defense to claim for breach of contract); N.M. U.J.I., Civil-839 (undue influence as defense to claim a breach of contract).

contract, CYFD argues that policy considerations militate against judicial recognition of a contract. In the Adoption Act, the New Mexico Legislature expressed its interest and set forth a public policy "to bring a high degree of certainty, finality, and stability to adoption and relinquishment proceedings." State ex rel. Human Services Dep't in re Kira M., 118 N.M. 563, 568-570, 883 P.2d 149, 154-156 (1994). There is, however, nothing in the Adoption Act that suggests whether the Legislature intended to allow or to preclude a finding that statutorily mandated documents can create a valid written contract. See NMSA 1978, §32A-5-2 ("Purpose" of Act).

Hence, rather than drawing an argument from the express language or structure of the Adoption Act, CYFD asks this Court to make policy decisions. CYFD suggests that a contract creating the former parent's right to sue for damage whenever he or she alleges -- years or even decades after the adoption -- that the child's adoptive parents had failed to "love and protect her" or failed to "provide for all of her needs," Complaint ¶¶ 12, 85, at 3, 16 (describing the alleged contract terms), severely undercuts the statutory goals of "certainty, finality, and stability" in relinquishments, and a 100% severing of the relinquishing parent's ties to the child. CYFD also argues that judicial recognition of a contract would undercut another express purpose of the Adoption Act: to create a post-adoption relationship between the adoptive parent and child that is "identical" to that of biological parent and child. See NMSA 1978, §§ 32A-5-2A, 32-5-37B. CYFD contends that, under the contract that Torrez seeks to enforce, the former parent would have the right to delve deeply and intimately into the new relationship, and to examine whether the adoptive parents were loving the child and adequately providing for all her needs. CYFD maintains that, if the adoptive relationship was not satisfactory, the former parent could sue the State for damages, including emotional and psychological distress damages. CYFD maintains that the adoptive parents and their child would

-17-

forever be the subject of scrutiny and formal discovery, and be potential witnesses regarding their family life, in aid of the former parent's contract rights.  CYFD contends that such an arrangement would hardly be an "identical" status to that of biological parent and biological child.

The Court does not deny the force of these arguments.  But there are two reasons that these arguments do not preclude a finding of a valid written contract here.  First, this a federal court; these policy arguments are better directed to the state legislature or to a state court.  This Court's task is limited to determining whether there is a valid written contract.  Deciding whether the contract is a good idea or a bad idea should be left to policymakers and to the State of New Mexico.

Second, the judicial recognition of a contract under the circumstances of this case would not contravene the public policy considerations that CYFD sets forth, for two additional reasons.  First, the finality and stability of the relinquishment proceeding is not at issue in this case.  By her claim of breach of contract, Torrez does not seek to set aside or otherwise challenge the relinquishment. Neither does Torrez seek to assert her own rights by imposing liability against CYFD for its breach of its contractual obligations to her.

Second, CYFD's concern that a former parent could sue for breach of contract years or even decades after the adoption is not a concern here.  The focus of this action, as would possibly be the case in many, if not all, such actions, is the period of time between the relinquishment and the finalization of the adoption.  For example, Torrez alleges that CYFD committed a breach of contract during the period within which it had legal custody of Grace by placing Grace with Veronica Bogey when it was aware or should have been aware that Veronica Bogey could not properly care for Grace, and by failing to intervene in the face of evidence that Bogey was abusing Grace.  Torrez concedes that, had CYFD met its contractual obligations, for example, to "assume the responsibility

-18-

of caring for the child, Graciela Monique Cano," before the state court finalized the adoption, Torrez would not have a claim for breach of contract even if she later found out that Veronica Bogey was abusing Grace.

In sum, a breach-of-contract claim under these circumstances places the focus on CYFD's actions, not on those of potential adoptive parents years or even decades after the state court finalized the adoption. Even if a court is the appropriate forum to address some or all of CYFD's policy concern, this would not be the case to do so. The Court could find a valid written contract here and not cause harm to the public policies to which CYFD points.

In conclusion, the State of New Mexico has waived sovereign immunity to allow a breach-of-contract cause of action for damages based upon a valid written contract. The Court cannot say that the relinquishment of parental rights and consent to adoption forms and documents do not, as a matter of law, constitute a "valid written contract" within the meaning of §37-1-23A.

## II.    TORREZ HAS DEMONSTRATED GENUINE ISSUES OF MATERIAL FACT WHETHER CYFD BREACHED ITS CONTRACT WITH HER.

Torrez contends that CYFD breached its contractual obligation to "assume the responsibility of caring for the child, Graciela Monique Cano, and will make every reasonable effort to select an adoptive home for said child, and place said child for adoption." Relinquishment of Parental Rights and Consent to Adoption ¶ 6, at 3. Torrez further argues that CYFD breached its obligation under the covenant of good faith and fair dealing, to place Grace in a safe adoptive family that would protect her, and provide for her care and needs. See Complaint ¶¶ 12, 85, at 3, 16. Specifically, Torrez argues that CYFD did not make reasonable efforts to locate prospective adoptive homes for Grace.

CYFD argues, in the alternative to its no-contract argument, that, even if the Court finds and concludes that the relinquishment of rights and consent to adoption documents constitute a valid written contract whereby Torrez may sue CYFD for damages based on an alleged breach, the undisputed evidence establishes that CYFD did not breach the contract.  CYFD contends that the contract does not support Torrez' characterization of the contract terms.  Within their four corners, the documents that Torrez alleges constitutes the valid written contract impose only the following obligations:  "I [Plaintiff Torrez] understand that [CYFD] <u>will assume the responsibility for caring for [Graciela]</u>, and will make every reasonable effort to select an adoptive home for said child, and <u>place said child for adoption</u>."   Relinquishment of Parental Rights and Consent to Adoption ¶ 6, at 3 (emphasis added).

The undisputed evidence shows that the Children's Court twice made post-relinquishment findings of fact that "CYFD is making reasonable efforts to locate a permanent adoptive home for the child [Graciela] that best meets the child's needs."  Judicial Review Order ¶ 6, at 2 (filed November 3, 1999; Stipulated Judicial Review Order ¶ 6, at 2 (filed May 3, 2000).[6]  CYFD contends that there is no evidence to the contrary.   While Torrez does not dispute that the state court made

---

[6] In its Reply brief, CYFD contends that Torrez, in 2004 in federal court, "attempts to collaterally attack, re-litigate and contradict the express finding of fact made twice by the Third Judicial District state court" in these Judicial Review Orders by her allegation that CYFD did not make reasonable efforts to locate prospective adoptive homes for Grace.  For the first time, CYFD argues -- in one paragraph -- that the Court's review of CYFD's actions with regard to Grace violates "principles of comity, deference, federalism, fairness and judicial economy" as asserted by CYFD.  Those are serious issues, but there has been almost no briefing on these new issues.  For example, CYFD has not addressed the possible breaches that may have occurred after May 3, 2000, the last time Judge Cornish made this finding.  CYFD does not address the fact that, at the time Judge Cornish made his findings of fact, he did not have before him all of the information now before this Court.  Accordingly, until CYFD properly presents these matters to the Court, the Court will not address them.

these findings of fact, Torrez does dispute that CYFD in fact made a reasonable effort to find Graciela a permanent adoptive home.  Further, Torrez contends that the state court was not presented with the facts which demonstrate that CYFD was in fact neglecting its contractual obligations to find Grace a safe adoptive home and to protect her from abuse.[7]

Moreover, CYFD contends the evidence is undisputed that CYFD did provide for Graciela's care during the time that CYFD had custody, did "select an adoptive home" for Graciela, and did "place [Graciela] for adoption."   CYFD contends, even if the Court finds that the relinquishment documents constitute a valid contract, CYFD fulfilled all of its express contractual obligations.  The documents forming the alleged formal contracts do not include any statement that CYFD "agreed" to "find [Graciela] a safe adoptive family that would protect her and provide for her care and needs" and/or that CYFD "would provide Grace with a safe home, and find an adoptive family who would love and protect her and be willing and able to care for all of Grace's needs, including her special medical needs[,]" as Torrez alleges in her complaint.  Relinquishment of Parental Authority and Consent to Adoption; Complaint ¶¶ 12, 85, at 3, 16.  The Court does not believe that Torrez is necessarily filling in blanks or making unsupportable leaps when she equates "caring for [Graciela] with providing her with a safe adoptive home, protecting her and providing for her care and needs."  The Court believes a reasonable reading of that phrase could include at least some of the acts and

---

[7] Torrez contends that the state court's finding of probable cause is insufficient to establish proof beyond a preponderance of the evidence for purposes of the summary judgment.  See United States v. Arizona, 534 U.S. 266, 274 (2002)("[T]he likelihood of criminal activity need not arise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.");  United States v. $242,484.00, 351 F.3d 499, 504 (11th Cir. 2003)("The probable cause standard demands less evidence than the preponderance-of-the-evidence standard."), rehearing en banc granted & vacated by 357 F.3d 1225 (11th Cir. Jan. 28, 2004).  Again, the Court need not decide this issue on the motion.

-21-

omissions about which Torrez complains.

Moreover, there is evidence in the record that CYFD breached the contract by not "caring for [Graciela]" by, among other things, not providing for her safety, placing her into the home of an abuser, failing to remove her from the home after learning of the abuse, and taking affirmative action that directly resulted in the state courts granting the abuser's adoption petition.  See Complaint ¶ 88, at 17; Rothfeld Report at 2.  There is evidence that CYFD recognized or should have recognized early in Grace's placement with Veronica Bogey that Veronica Bogey could not adequately care for Grace, but did not intervene.  See id.  There is evidence that CYFD, by and through its employees, learned of credible allegations that Veronica Bogey was abusing Grace, but did not investigate the abuse or otherwise protect Grace from the continued abuse.  See id.  There is evidence that CYFD did not conduct any or an adequate background investigation of Terry Bogey despite its knowledge that Terry would be one of Grace's primary care providers after the state court finalized the adoption. See Running Narrative, entries of February 3, 2000 and March 15, 2000.   There is evidence that CYFD did not properly monitor or supervise Grace in the Bogey home, after it learned of the allegations of abuse, before the state court finalized the adoption.  See Deposition of Sonia Perez Sanchez at 35:8 - 36:11, 51:3 - 52:18 (taken June 6, 2003)(stating that Sanchez did not conduct monthly home visits and conducted the first home visit five months after Graciela's initial placement in the Bogey home); Deposition of Virginia Villareal at 22:8 - 23:4 (taken June 6, 2003)(stating Villareal did not make any home visits).  There is also evidence that CYFD, by and through its employees, misrepresented Veronica Bogey's ability to care for Grace to the state children's court. See In the Matter of the Adoption of a Minor Child, Adoption Consent (Fifth Judicial District Court)(signed by Villareal on March 22, 2000, the same day that Janie Mealand reported allegations

of abuse to Sanchez); id., Post Placement Court Report, signed by Villareal, filed June 6, 2000 (does not mention report of abuse or describe any investigation into abuse).

These allegations and evidence demonstrate that there are factual issues surrounding CYFD's breach of its contractual obligation to care for Grace. Construing all facts and reasonable inferences in Torrez' favor, Torrez has demonstrated the existence of genuine issues of material fact sufficient to CYFD's motion for summary judgment on her breach of contract claim. She has presented evidence that CYFD breached its obligations under this contract. In conclusion, the jury should decide this issue. The Court will therefore deny CYFD's motion for summary judgment.

## III.   TORREZ HAS DEMONSTRATED A GENUINE ISSUE OF MATERIAL FACT WHETHER CYFD BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING.

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 438, 872 P.2d 852, 856 (1994)(quoting Watson Truck & Supply Co. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990)(emphasis added)). "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything to injure the rights of the other to receive the benefit of their agreement." Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 438, 872 P.2d at 856. Torrez argues that CYFD's actions also breached the covenant of good faith and fair dealing implied in every contract. See Complaint ¶ 88, at 17.

Apparently concerned that the express terms of the written contract may not cover any allegations of her complaint,[8] Torrez contends that an implied covenant of good faith and fair dealing

---

[8]   For example, Torrez has alleged that the valid written contract obligated CYFD to guarantee that the adoptive family "would love" Graciela. Complaint ¶ 12, at 3.

created additional, unwritten contractural obligations to place Grace in a safe adoptive family that

would protect her, and provide for her care and needs.  Torrez asserts that, under the covenant of

good faith and fair dealing, CYFD had a contractual obligation to place Grace in a "safe adoptive

family that would protect her, and provide for her care and needs."  Complaint ¶¶ 12, 85, at 3, 16.

Here, Torrez argues, the covenant required that CYFD would find Grace a safe adoptive family to

care for her and provide for her needs, and was an integral part of the contract at issue.  This

covenant allegedly flows from the clear, unambiguous written terms of the contract -- the

Relinquishment of Parental Rights.

No New Mexico case law has ever held that a valid written contract with a state agency,

subject to the waiver of immunity in § 37-1-23(A), includes an implied covenant of good faith and

fair dealing.  The New Mexico Court of Appeals declined to dismiss a claim for breach of the implied

covenant of good faith and fair dealing in the face of §37-1-23, instead remanding the issue to the

district court.  See Moriarity Mun. Schs. v. Public Schs. Ins. Auth., 131 N.M. 180, 2001-NMCA-096

¶ 26.  The New Mexico Court of Appeals expressly reserved this issue for decision.  See Moriarity

Mun. Schs. v. Public Schs. Ins. Auth., 2001-NMCA-096, ¶ 26, 34 P.3d 124, 130 ("We also leave for

determination below whether the claims for breach of the implied covenant of good faith and fair

dealing and fiduciary duty can be pursued in the face of Section 37-1-23.").

CYFD argues that there are good reasons not to imply a covenant of good faith and fair

dealing into contracts with the state.  First, the New Mexico courts have held that § 37-1-23(A) does

not waive, other than for employment contracts, immunity for implied-in-law contracts or implied-in-

fact contracts.  CYFD contends that recognition of implied covenants might, therefore, arguably

contravene the legislative intent.  See Campos De Suenos, Ltd. v. County of Bernalillo, 2001-NMCA-

043, ¶ 29, 28 P.3d 1104, 1112 ("One way or another, the taxpayer will be held financially accountable if [the plaintiff] is allowed to sue and recover consequential damages for the breach of an implied-in-fact agreement, without the benefit of demanding that the agreement rise to the level of formality, and public scrutiny, that accompanies an express written contract.").

Second, CYFD asserts that, apart from § 37-1-23A, implied covenants are not favored in New Mexico, especially where a written contract is apparently complete.  "The general rule is that an implied covenant cannot co-exist with express covenants that specifically cover the same subject matter." Continental Potash, Inc. v. Freeport McMoran, Inc., 115 N.M. 690, 704, 858 P.2d 66, 80 (1993), cert. denied, 510 U.S. 1116 (1994).  CYFD contends that even, in written contracts where the law recognizes an implied covenant of good faith and fair dealing, it merely is what it suggests: a promise to perform the contractual obligations in good faith.  The implied covenant of good faith and fair dealing does not create or add substantive contractual terms, and certainly does not do so where the written contract addresses a specific subject. See, e.g., Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. 726, 731, 749 P.2d 1105, 1111 (1988)("We align also with those courts that have refused to apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated, written contract.").  This Court believes that it is likely that the New Mexico courts, when presented with the issue, would hold that the implied covenant of good faith and fair dealing applies to a written contract to which a governmental entity is a party.  The Supreme Court of New Mexico has twice said "every contract" imposes the duty of good faith and fair dealing.  Until the Supreme Court says otherwise, this federal court should not create categories of contracts that do not contain that duty.

The remaining issue is what the covenant of good faith and fair dealing would add, if anything,

to the express language.  CYFD argues that Torrez is using the implied covenant of good faith and fair dealing to expand, supplement, and embellish an express term of the alleged written contract. CYFD contends that Torrez is attempting to transform CYFD's duty "to make every reasonable effort to select an adoptive home" for Grace into a very difficult, more onerous obligation "to place Grace in a safe adoptive family that will protect her and provide for her care and needs."

It may be true that the phrase "to make every reasonable effort to select an adoptive home" does not support Torrez' other allegations and would be, without any other language from the relinquishment documents, an attempt to add other, implied substantive duties to the writings.  But CYFD does not address what "caring for [Graciela]" might include.  In any case, if it does not expressly cover all of Torrez' allegations, with the covenant of good faith and fair dealing, it may come close or actually do so.

The Supreme Court of New Mexico's pronouncement on the application of an implied covenant of good faith and fair dealing appears to be more narrow than CYFD asserts.  The New Mexico court's concern seems to be about situations where the application of an implied covenant of good faith and fair dealing would not only add terms to the contract, but those additional terms would override the express, written terms.  Torrez' argument is not that the covenant of good faith and fair dealing supplies terms that the Court should consider which override or contradict the express terms in the alleged written contract.  Rather, Torrez argues that the covenant of good faith and fair dealing required CYFD to meet its contractual obligation in good faith "to make every reasonable effort to select an adoptive home" for Grace, and that meeting this obligation in good faith required CYFD "to place Grace in a safe adoptive family that will protect her and provide for her care and needs."

Torrez contends that it would contravene public policy and common sense to allow suit against governmental entities based on the provisions of valid written contracts without requiring those governmental entities to abide by the covenant of good faith and fair dealing implicit in every contract.  Torrez has demonstrated that there are genuine issues of material fact whether there is an implied covenant of good faith and fair dealing which required CYFD to meet its contractual obligations in good faith by placing Grace in a safe adoptive home, and not just any adoptive home or in a dangerous adoptive home.  But even if the state courts decide that there is no implied covenant, the Court believes that "caring for [Grace]" in the contract may cover Torrez' allegations. In any case, because issues of fact exist, the Court will deny CYFD's motion for summary judgment on Count IX.

**IT IS ORDERED** that the Defendant CYFD's Motion for Summary Judgment as to Count IX of Amended Complaint is denied.


_____
UNITED STATES DISTRICT JUDGE


Counsel:

Mary Y.C. Han
Adam S. Baker
Kennedy & Han, P.C.
Albuquerque, New Mexico

   *Attorneys for the Plaintiffs*

-27-

Tim Flynn-O'Brien
Bryan & Flynn-O'Brien
Albuquerque, New Mexico

> *Attorney for Defendants Bonnie Vehstedt, Lydia R. Saenz,*
> *Karen Zarate, and Virginia Villareal*

Randolph B. Felker
Felker, Ish, Ritchie, & Geer, P.A.
Santa Fe, New Mexico

> *Attorneys for Defendants Anne Holmes, Sonia (Sanchez) Perez,*
> *Ginger Bowman, Denise H. Narvaez, Vivian Encinias,*

Jerry A. Walz
Walz and Associates
Cedar Crest, New Mexico

> *Attorneys for Defendants Veronica Bogey and Terry Bogey*

Michael Dickman
Law Office of Michael Dickman
Santa Fe, New Mexico

> *Attorneys for Defendant Children, Youth, and Families Department*