IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SCOTT JOHNSON, as personal representative of
the estate of GRACIELA CANO a/k/a GRACE
LEE BOGEY, deceased, and LORENA TORREZ,

        Plaintiffs,

vs.                                       No. CIV-02-1239 JB/KBM

ANNE HOLMES, BONNIE VEHSTEDT,
KAREN ZARATE, LYDIA R. SAENZ, SONIA
PEREZ, VIRGINIA VILLAREAL, VIVIAN
ENCINIAS, GINGER BOWMAN, DENISE H.
NARVAEZ, JANE DOE, and JOHN DOE in their
individual capacities, the NEW MEXICO
CHILDREN YOUTH AND FAMILIES DEPARTMENT,
TERRY BOGEY, a/k/a TERI BOGEY, and
VERONICA BOGEY,

        Defendants.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on three motions: (i) Defendant CYFD's Motion
to Dismiss Counts V and VI, filed October 7, 2002 (Doc. 3); (ii) Defendants Saenz, Vehstedt, Zarate
and Villareal's Motion to Dismiss Counts V and VI, filed November 5, 2002 (Doc. 17); and (iii) the
CYFD Defendants Anne Holmes, Bonnie Vehstedt, Karen Zarate, Lydia R. Saenz, Sonia (Sanchez)
Perez, Virginia Villareal, Vivian Encinias, Ginger Bowman and Denise H. Narvaez' Motion to
Dismiss State Tort Claims, filed March 13, 2003 (Doc. 51).  The primary issue is whether the State
of New Mexico has waived immunity for a claim of negligence by its social workers.  Because the
Court finds that New Mexico has not waived immunity for the state tort claims in this case, the Court

has granted the motions and dismissed Counts V and VI.[1]

## FACTUAL BACKGROUND

Defendant Children, Youth and Families Department ("CYFD") is an agency of the State of New Mexico, charged with duties of administration of all laws and the exercise of all functions relating to children, youth, and families. See Amended Complaint ¶ 4, at 2. Defendants Holmes, Encinias, Perez, Bowman, Villareal, Narvaez, John Doe, and Jane Doe were, at all relevant times, CYFD employees, supervisory employees, and social workers. See id. ¶ 5, at 2. Defendants Vehstedt, Zarate, and Saenz were, at all relevant times, supervisory employees of CYFD who were responsible for the supervision, training, and discipline of the other, individually named CYFD Defendants, and who had the authority to formulate or approve a permanent placement plan for Grace Bogey, a special needs child born with spinabifida to Plaintiff Lorena Torrez on July 15, 1997. See id. ¶¶ 5, 11, 42, at 2, 3, 9. The Plaintiffs' Complaint refers collectively to CYFD itself and to all eleven of the foregoing individual Defendants as "the CYFD Defendants." Id. ¶ 7, at 3. The individual CYFD Defendants were acting within the scope of their employment at all material times. See id. The Amended Complaint also alleges that Defendant Veronica Bogey was at all relevant times a servant of CYFD. See id. ¶ 6, at 2.

---

[1]The Court has previously entered the following Orders: Order granting Defendant CYFD's Motion to Dismiss Counts V and VI, see Order, filed March, 19, 2004 (Doc. 181); Order granting Defendants Saenz, Vehstedt, Zarate and Villareal's Motion to Dismiss Counts V and VI, see Order, filed March 30, 2004 (Doc. 191); and Order granting the CYFD Defendants Anne Holmes, Bonnie Vehstedt, Karen Zarate, Lydia R. Saenz, Sonia (Sanchez) Perez, Virginia Villareal, Vivian Encinias, Ginger Bowman and Denise H. Narvaez' Motion to Dismiss State Tort Claims, see Order, filed March 30, 2005 (Doc. 193). This opinion is intended to explain more fully the Court's reasoning for its previous Orders.

On January 2, 1998, CYFD obtained legal custody of Grace Bogey.  <u>See</u> <u>id.</u> ¶ 11, at 3.  In or around March 1999, the CYFD Defendants obtained a relinquishment of parental rights from Torrez, age fifteen.  <u>See</u> <u>id.</u> ¶¶ 12, 13, at 3.  The CYFD Defendants promised to provide Grace a safe home with an adoptive family who would love, protect, and provide for all of Grace's needs, including her special medical needs.  <u>See</u> <u>id.</u>  Thereafter, Grace was freed for adoption.  <u>See</u> <u>id.</u> ¶ 14, at 3.

On November 6, 1999, after conducting two home visits, an inadequate home study and background investigation of Bogey, and despite concerns raised by Grace's foster parents, the CYFD Defendants placed Grace in Veronica Bogey's home.  <u>See</u> <u>id.</u> ¶ 15, at 4.  CYFD subsidized the adoption and paid Bogey a monthly stipend in the amount of approximately $487.00 as compensation for taking physical custody of Grace.  <u>See</u> <u>id.</u> ¶ 16, at 4.  In December 1999, one month after taking physical custody of Grace, Bogey did not show up for the second home visit by Sonia Perez, and Perez was unable to visit with Grace.  <u>See</u> <u>id.</u> ¶ 18, at 4.  The CYFD Defendants did not investigate this "no show" and did not follow up with another home visit until April 3, 2000.  <u>See</u> <u>id.</u>

On March 23, 2000, the CYFD Defendants received a report that Bogey was physically abusing Grace.  <u>See</u> <u>id.</u> ¶ 19, at 4.  Specifically, Grace's home health nurse reported to the CYFD Defendants that: (i) in or around February 2000, she observed a large purple bruise on the left side of Grace's face that Bogey admitted she caused; (ii) on or about March 16, 2000, she observed deep scratches on Grace's abdomen, which Bogey admitted she caused and which were so severe that they would cause scarring on Grace; (iii) on or about March 20, 2000, she observed Grace's hand to be swollen and bruised; and (iv) on March 21, 2000, she noticed fingernail marks on Grace's back and neck.  <u>See</u> <u>id.</u> ¶ 20, at 4-5.  The CYFD Defendants made only one home visit to Bogey on April 3, 2000 to investigate the allegations.  <u>See</u> <u>id.</u> ¶ 21, at 5.  The CYFD Defendants did not conduct any

further investigation into the allegations, despite facts substantiating the reported abuse.  See id.

The CYFD Defendants conducted only three home visits to the Bogey residence in the six-month period that Grace resided with Bogey.  See id. ¶¶ 17, 18, 21, 25, at 4-5.  Defendant Terry Bogey was, at all relevant times, a caregiver of Grace Bogey.  See id. ¶ 8, at 3.  During this time, Veronica Bogey and Terry Bogey, who resided in the Bogey residence, repeatedly physically abused and battered Grace.  See id. ¶ 8, 25, at 3, 5.

Despite the reported abuse, the CYFD Defendants left Grace in the Bogey home and made recommendations to the Court that resulted in the state court granting the adoption petition on July 31, 2000.  See id. ¶ 22, 24, at 5.  Defendant CYFD paid the cost of Bogey's attorney for the adoption proceedings.  See id. ¶ 23, at 5.  Thus, Bogey, with the CYFD Defendants' support and financial backing, was able to adopt Grace on July 31, 2000.  See id. ¶ 24, at 5.

After Torrez relinquished her parental rights, both before and after the adoption, Grace Bogey was placed in and physically resided with Veronica Bogey in the Bogey residence or home.  See id. ¶¶ 12-17, 22, 25, at 3-5.  Grace died on September 2, 2000 as a result of injuries she received in the Bogey home.  See id. ¶ 26, at 5-6.  Grace's autopsy revealed that trauma caused massive swelling and bleeding in her brain, and the Office of the Medical Investigator designated the manner of death as homicide.  See id.  The State of New Mexico has charged Veronica and Terry Bogey with the homicide.  See id.  Grace's autopsy also revealed a broken arm, which doctors determined had been broken two to several weeks before September 2, 2000, indicating that Grace suffered a pattern of physical abuse at the hands of the Bogey Defendants.  See id. ¶ 27, at 6.  As a result of the Defendants' wrongful acts, Grace incurred damages, including but not limited to physical pain and suffering, torture, extreme emotional distress, fear, apprehension, and the loss of her life, including

-4-

the value and enjoyment of the remainder of her life.  See id. ¶¶ 28, 60, at 6, 12.

## PROCEDURAL BACKGROUND

In their Amended Complaint, the Plaintiffs allege that the CYFD Defendants had a duty: to ensure the safe and proper disposition of children they took into their legal custody and control; to avoid placing such children in situations of greater danger than those from which the Defendants removed the children in the first place; to refrain from enhancing the special dangers to which such children were already subject; and to monitor and rescue the children from any special dangers to which the Defendants' actions exposed them.  See id. ¶ 31, at 6 - 7.  The Amended Complaint also alleges that the CYFD Defendants placed Grace in a home that they knew or should have known to be dangerous or otherwise unfit, left Grace in that home even after receiving reports of numerous incidents of physical abuse, and took affirmative actions and made representations to the courts that resulted in Grace's abusers being able to adopt her.  See id. ¶ 33, at 7.

The Amended Complaint further asserts that CYFD breached their affirmative duty to provide protection and supervision to Grace, and departed from accepted professional judgment, practice, or standards so as to abdicate reliance on professional judgment in their decisions regarding the placement and monitoring of Grace.  See id. ¶ 34, at 7.  The Amended Complaint also alleges that the CYFD Defendants did not monitor or review either the placement of Grace or the conditions within Bogey's home before and after her placement there.  See id. ¶ 39, at 8.  The supervisory Defendants knew about a pervasive risk of abuse of children in the care of CYFD agents, especially in the absence of frequent and ongoing monitoring by the CYFD Defendants.  See id. ¶ 41, at 8.  The supervisory Defendants did not protect Grace from Bogey's ongoing physical abuse and did not take steps to adequately ensure Grace's safety by: requiring their employees and agents to make frequent

-5-

home visits; conducting an ongoing investigation of Bogey; investigating allegations of abuse fully and properly; reporting adequately and accurately to the courts information which would stop or delay an inappropriate adoption; training and supervising employees and agents adequately; and instituting and enforcing adequate procedures and regulations to ensure proper investigation and follow up with agency placements.  See id. ¶¶ 43, 45, at 9.

The Amended Complaint alleges that the CYFD Defendants had a duty to provide their wards, including Grace,  with proper care and placement, including the duty to protect them from the criminal acts of third parties with whom children in CYFD's legal custody were placed.  See id. ¶ 58, at 12.  The Amended Complaint also alleges that the CYFD Defendants failed to conduct an adequate screening and background investigation of Bogey before placing Grace in the home, did not remove Grace from Bogey's physical custody when there were numerous signs of abuse and other warnings, and made misrepresentations to the Court so that it would grant Bogey's adoption petition.  See id. ¶ 59, at 12.

The Amended Complaint alleges that, as Grace's legal custodians, CYFD and its employees and agents, including the CYFD Defendants, owed Grace the following duties: (i) to protect Grace from physical and emotional abuse and death; (ii) to exercise professional judgment in attempting to place Grace in a safe environment free from abuse; (iii) to monitor the conditions of that environment; (iv) to exercise professional judgment in the preparation of reports and recommendations to the courts regarding placement and adoption; (v) to report material facts to the court; (vi) to refrain from knowingly or recklessly supplying false reports concerning the placement of children such as Grace to the courts; (vii) to protect Grace from dangers which CYFD Defendants created or enhanced; (viii) to train, supervise, review and control subordinates and agents in all phases of their duties to secure

-6-

the proper disposition of children within CYFD custody; and (ix) to monitor and ensure the children's well being and welfare.  See id.  ¶¶ 66-68, at 13-14.  The Amended Complaint alleges that CYFD and the CYFD Defendants failed to exercise such care, and thus knowingly, recklessly, or with deliberate indifference toward and callous disregard for Grace's rights, failed to instruct, supervise, control, and discipline on a continuing basis their subordinate employees so as to protect Grace's right to be free from abuse.  See id. ¶¶ 67, 68, at 13-14.

The Amended Complaint alleges that CYFD is vicariously liable for the individual Defendants' conduct.  The Amended Complaint also alleges that the individual CYFD Defendants' conduct was committed in the course and scope of their duties and employment with CYFD "and in the maintenance and operation of CYFD facilities and wards" and their conduct "amounts to negligent operation and maintenance of a public facility and equipment and their sovereign immunity is waived." Id. ¶¶ 61, 63, at 12.  See also id. ¶ 65, at 13.   Further, the Amended Complaint alleges:  "The CYFD Defendants are akin to law enforcement officers and acted as such in their handling of the investigation into allegations of criminal abuse of Grace.  At all times material hereto they were acting within the scope of their duties as law enforcement officers and their sovereign immunity is waived." Id. ¶ 62, at 12.  The Amended Complaint alleges that the CYFD Defendants' conduct amounts to negligent operation and maintenance of a public facility and equipment and their sovereign immunity is waived.  See id. ¶ 63, at 12.

The Amended Complaint also alleges that Torrez and the CYFD Defendants entered into a valid and binding contract whereby Torrez agreed to relinquish her parental rights to Grace, and CYFD agreed to care for Grace, and to find her a safe adoptive family that would protect her and provide for her care and needs.  See id. ¶¶ 13, 85, at 3, 16.

-7-

The Plaintiffs assert four counts against CYFD: Counts V, VI, VII, and IX.  In Count V of the Plaintiffs' Amended Complaint, Plaintiff Scott Johnson has asserted tort claims against CYFD and its agents and employees, the CYFD Defendants, under the New Mexico Tort Claims Act.  Count V attempts to plead a tort claim under two sections of the New Mexico Tort Claims Act.  See §41-4-6 NMSA 1978 ("[N]egligence . . .  in the operation or maintenance of any building [or] equipment or furnishings"); §41-4-12 NMSA 1978 ("law enforcement officers").

In Count VI of the Plaintiffs' Amended Complaint, Johnson asserts alternative negligence claims against CYFD and the CYFD Defendants under the Tort Claims Act, including breach of alleged duties: (i) to protect Grace from physical and emotional abuse and death; (ii) to exercise professional judgment in attempting to place Grace in a safe environment; (iii) to monitor the conditions of that environment; (iv) to prepare reports and recommendations to the courts regarding placement and adoption; (v) to report material facts to the court; (vi) to refrain from knowingly or recklessly supplying false reports to the courts; (vi) to protect Grace from dangers which CYFD Defendants created or enhanced; (vii) to train, supervise, review, and control subordinates and agents in all phases of their duties to secure the proper disposition of children in CYFD's custody; and (viii) to monitor the welfare of the children in CYFD custody.  See Amended Complaint ¶ 66-68, at 13-14.

Count VI alleges negligence, but does not identify any specific, other, or additional section of the New Mexico Tort Claims Act, which allegedly waives sovereign immunity.  CYFD moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court to dismiss with prejudice Counts V and VI of the Amended Complaint for Civil Rights Violations, Breach of Contract, Tort Claims and Damages.  Counts VII and IX are the subjects of two other, separate CYFD motions.

In its motion to dismiss, CYFD contends that Counts V and VI do not state, as a matter of

law, any claims upon which the court can grant relief against CYFD under the New Mexico Tort Claims Act.  Specifically, CYFD contends that Johnson has not stated valid Tort Claims Act waivers of immunity and that sovereign immunity therefore bars Johnson's tort claims.  CYFD urges the Court to dismiss Counts V and VI.   Defendants Anne Holmes, Sonia (Sanchez) Perez, Vivian Encinias, Ginger Bowman, Denise H. Narvaez, Lydia R. Saenz, Bonnie Vehstedt, Karen Zarate, and Virginia Villareal join CYFD's motion, and move, pursuant to Rule 12(b)(6), to dismiss Counts V and VI of the Amended Complaint for failure to state a claim.

## STANDARD FOR DECIDING A MOTION TO DISMISS

A pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A pleading satisfies Rule 8 if it gives "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

The failure in a complaint to cite a particular statute, or to cite the correct one, does not affect the merits of a claim.  "Factual allegations alone are what matters." Albert v. Carovano, 851 F.2d 561, 571 n.3 (2d Cir. 1988)(en banc)(remanding to allow leave to amend the complaint to assert claim under 42 U.S.C. § 1981 even though the complaint expressly claimed relief under the Fourteenth Amendment and did not also cite § 1981 when factual allegations would support both claims). See Johnson v. Jackson, 82 F. Supp. 915, 918 (E.D. Pa. 1949)("If the pleading states a cause of action for relief, the designation of the cause and the prayer for relief, although some indication of the nature of the cause, are not controlling and the appropriate relief under the facts pleaded, will be granted.").

However, the court need not accept the conclusions of law or claimed application of law to

-9-

the alleged facts.  See Olpin v. Ideal Nat'l Ins. Co., 419 F.2d 1250, 1255 (10th Cir. 1969) (stating "neither the trial court nor this court is bound to accept mere legal conclusions" in evaluating a motion to dismiss), cert. denied, 397 U.S. 1074 (1970).  Nor is the court "bound to accept as true a legal conclusion couched as a factual allegation." Brooks v. Sauceda, 85 F.Supp.2d 1115, 1123 (D.Kan. 2000)(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

"When a federal court reviews the sufficiency of a complaint [under Rule 12(b)], before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. at 236. Thus, in evaluating a motion to dismiss for failure to state a claim, the court should liberally construe the complaint, accept as true all its factual allegations, and draw all reasonable inference in the plaintiff's favor. See Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). The court may dismiss the complaint only if it appears to a certainty that the plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. See Conley v. Gibson, 355 U.S. at 45-46. The court will consider CYFD's motion in light of these standards.

## LEGAL ANALYSIS

Regarding the applicable waiver of sovereign immunity under the Tort Claims Act, Johnson has alleged that the CYFD Defendants are akin to law enforcement officers and acted as such in their handling of the investigation into allegations of criminal abuse of Grace, and that at all material times the CYFD Defendants were acting within the scope of their duties as law enforcement officers and thus the State of New Mexico has waived sovereign immunity for such conduct. Johnson further

-10-

alleges that the CYFD Defendants' conduct amounts to negligent operation and maintenance of a public facility and equipment, and that the State of New Mexico has also waived sovereign immunity for this conduct.  Taking the allegations in the Plaintiffs' Amended Complaint as true, and drawing all reasonable inferences in the Johnson's favor, the Court found that the New Mexico Legislature has not waived CYFD's sovereign immunity under the law enforcement exception, § 41-4-12 of the Tort Claims Act, or under the negligent maintenance of a public facility exception, § 41-4-6 of the Tort Claims Act.  See §§ 41-4-6, 41-4-12 NMSA 1978.  Johnson's claims in Counts V and VI do not state a cause of action for which the Court can grant relief, and the Court has granted the Defendants' motions to dismiss.

I.   **THE PLAINTIFFS' AMENDED COMPLAINT SUFFICIENTLY ALLEGES THE STATUTORY SECTIONS ON WHICH JOHNSON IS RELYING TO ALLEGE WAIVER OF SOVEREIGN IMMUNITY.**

Count V of the Amended Complaint, styled as "Tort Claims" against all Defendants, including CYFD and the CYFD Defendants, does not cite to any specific section of the New Mexico Tort Claims Act.  The body of Count V makes two different references to alleged waivers of sovereign immunity: (i) a reference to "negligent operation and maintenance of a public facility and equipment" and "maintenance and operation of CYFD facilities and wards" and (ii) a second reference to "the handling of the investigation into allegations of criminal abuse of Grace" by CYFD employees who allegedly are "akin to law enforcement officers."   Amended Complaint ¶¶ 61-63, at 12.  Johnson is attempting to plead the waiver of immunity set forth in § 41-4-6 and § 41-4-12 of the Tort Claims Act.

CYFD suggests that the Plaintiffs' Amended Complaint is deficient, at least as to Count VI, because it does not contain citations to the statutory sections on which Johnson relies.  Johnson's

Amended Complaint, however, satisfies notice pleading requirements and puts the CYFD Defendants on notice that he is relying on the law enforcement exception in § 41-4-12 NMSA 1978, and the negligent maintenance and operation of a public facility exception in § 41-4-6 NMSA 1978, of the New Mexico Tort Claims Act.

## II.   COUNT V DOES NOT STATE A VALID CLAIM FOR RELIEF.

The Court has construed all pleaded facts liberally.  Nevertheless, Count V does not state a claim upon which the Court can grant relief.  Neither § 41-4-6 NMSA 1978 nor § 41-4-12 NMSA 1978 waive sovereign immunity for the acts alleged.

### A.   THERE IS SOVEREIGN IMMUNITY UNLESS THERE IS AN EXPRESS WAIVER.

A governmental entity such as CYFD and "any public employee while acting within the scope of duty" are immune from "liability for any tort" except as expressly waived in the New Mexico Tort Claims Act.  § 41- 4- 4(A) NMSA 1978 (Repl. Pamp. 1996, 2001 Cum. Supp.).  Waiver of immunity from tort actions "shall be limited to and governed by" the Tort Claims Act, and the Act "shall be the exclusive remedy . . . for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought[.]"  §§ 41-4-4(A), 41-4-17(A) NMSA 1978.  The Tort Claims Act waives sovereign tort immunity in enumerated circumstances.  See §§ 41-4-5 to 41-4-12 NMSA 1978. The Court must separately evaluate whether each named defendant is subject to waivers of immunity and whether Johnson may sue each named defendant under the Tort Claims Act.  See Abalos v. Bernalillo District Attorney's Office, 105 N.M. 554, 557, 734 P.2d 794, 797 (Ct. App. 1987).

### B.   SECTION 41-4-6 DOES NOT WAIVE SOVEREIGN IMMUNITY FOR THE ACTS ALLEGED.

-12-

Johnson has attempted to plead one circumstance where the New Mexico Legislature has waived sovereign immunity:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings.

Section 41-4-6 NMSA 1978.

The Supreme Court of New Mexico has "expressed disagreement with a narrow and formalistic interpretation of Section 41-4-6." Cobos v. Dona Ana County Housing Auth., 1998-NMSC-049, ¶ 10, 970 P.2d 1143, 1147. See Williams v. Central Consolidated School Dist., 1998-NMCA-006, ¶ 10, 952 P.2d 978, 981("[O]ur Supreme Court has rejected a narrow view of 'operation or maintenance' with respect to public buildings, in favor of a broad interpretation of Section 41-4-6."). Instead, the Supreme Court has held that "[s]ection 41-4-6 . . . contemplate[s] waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government." Castillo v. Santa Fe County, 107 N.M. 204, 205, 755 P.2d 48, 49 (1988).  In other words, § 41-4-6's waiver is not limited to cases arising out of physical defects in a building, but extends to dangerous conditions on the premises as well.  See Bober v. New Mexico State Fair, 111 N.M. 644, 653, 808 P.2d 614, 623 (1991); Callaway v. New Mexico Dep't of Corrections, 117 N.M. 637, 642, 875 P.2d 393, 398 (Ct. App. 1994), cert. denied, 118 N.M. 90, 879 P.2d 91 (1994).  Moreover, this tort claims waiver is not limited only to "property in which the public entity has a real property interest or a landowner's duty." Cobos v. Dona Ana County Housing Auth., 1998-NMSC-049 at ¶ 9, 970 P.2d

-13-

at 1146.  Rather, "an ownership interest in a building is but one of several ways of proving that a duty to operate or maintain exists."  Id. at ¶ 10, 970 P.2d at 1146-47.

In considering whether a governmental entity or employee possesses a duty to operate or maintain a facility to bring that entity or person within the waiver contained in § 41-4-6 NMSA 1978, the Court must examine the "scope of duties" of the public employees to operate or maintain the building in question.  Id. 1998-NMSC-049 at ¶ 8, 970 P.2d at 1146.  Included in the scope of duties are "any duties that a public employee is requested, required, or authorized to perform . . . regardless of the time and place of performance."  Id. 1998-NMSC-049 at ¶ 8, 970 P.2d at 1146 (quoting § 41-4-3(G) NMSA 1978).  The determination that a duty exists in a given situation involves an analysis of: (i) the relationship of the parties; (ii) the plaintiff's injured interest; and (iii) the governmental actor's conduct.  See id. 1998-NMSC-049 at ¶ 11, 970 P.2d at 1147.  Although not an exclusive source of duties, statutes, regulations, and contracts may impose duties of ordinary care on public employees that bring them within § 41-4-6's waiver.  See id. 1998-NMSC-049 at ¶ 12, 970 P.2d at 1147-48.  Construing the Amended Complaint in a broad, liberal light, there are two reasons why the allegations, as a matter of law, do not establish waiver of immunity under § 41-4-6 NMSA 1978 and thus fail to state a valid claim for relief against CYFD and the individuals CYFD social workers and social worker supervisors.

### 1.   The Complaint Does Not Allege that the CYFD Defendants Had Duties of Operation and Maintenance of the Private Residence in Which Bogey Resided and in Which Bogey Allegedly Murdered Grace.

Count V does not allege an essential element of a claim for relief under § 41-4-6 NMSA 1978, that is, that the individually named CYFD Defendants -- all allegedly social workers or their supervisors -- had any duties to operate and/or maintain the residential building in which the alleged

-14-

homicide occurred.

Regarding this element of a defendant's duties, the Supreme Court of New Mexico construed

§ 41-4-6 NMSA 1978 in <u>Cobos v. Dona Ana County Housing Auth.</u>:

> We hold that Section 41-4-6 applies to "any building," public or private, that public employees have a duty to operate and maintain with ordinary care.  The Authority employees had duties of operation and maintenance of this home as part of their control of housing project.  Therefore, we reverse [the district court's dismissal of the complaint] and remand for further proceedings as to the individual defendants.

1998-NMSC-049 at ¶ 20, 970 P.2d at 1151.  In <u>Cobos</u>, there were specific statutes, regulations, and

contracts that expressly imposed upon the Dona Ana County Housing Authority's employees duties

of operation or maintenance of the building at issue.  <u>See id.</u> 1998-NMSC-049 at ¶ 18, 970 P.2d at

1150 (noting that statute required county employees to "maintain, operate and manage any [county]

housing project," including privately owned projects).

Johnson argues that there was a contract between the CYFD Defendants and Torrez that

created a duty to "provide Grace with a safe home, and find an adoptive family who would love and

protect her and be willing and able to provide for all of Grace's needs, including her special medical

needs." Amended Complaint ¶¶ 11-13, 85, at 3, 16.  Johnson argues that the CYFD Defendants

had an independent duty by reason of their special relationship to Grace to provide protection and

supervision to Grace.  <u>See id.</u> ¶¶ 11, 15, 17, 18, 25, 31, 41, 43, 66, at 3-9, 13.  Johnson contends that

this duty included a duty to place Grace in a safe home and to employ frequent and ongoing

monitoring of the home environment after the placement.  <u>See id.</u>  Johnson argues in his response

that he anticipates that the evidence will show that the CYFD Defendants exercised control over the

home environment and operated the home by providing home health care nurses and equipment for

Grace's special needs, and by dictating living conditions such as the presence of pets.

-15-

Johnson subtly equates the phrase "home" with the word "house," the building itself. It is true that the words are often use interchangeably, but in this case, the statute is talking about structures and buildings, not family. The CYFD Defendants may well have had a duty to supervise the Bogey home and its occupants by conducting home visits and home studies to ensure that the home environment was and continued to be safe for Grace, both before and after the placement. See id. ¶¶ 15, 17, 18, 25, 31, 34, 39, 41, 43, 66, at 4-9, 13. They may also be legally obligated to continue the home visits, home monitoring, and home studies after placing Grace in the Bogey home. See id. Johnson may have sufficiently alleged a duty to provide a safe home and a breach of that duty that resulted in ongoing injury and ultimately the death by murder of Grace. See id. ¶¶ 25, 26, at 5-6. Johnson has not, however, sufficiently alleged that the CYFD Defendants had duties related to the operation and maintenance of the Bogey's building or structure. A duty to regulate or inspect a building alone does not constitute "the operation or maintenance of [a] building" within the meaning of § 41-4-6 NMSA 1978. Cobos v. Dona Ana County Housing Auth., 1998-NMSC-049 at ¶ 15, 970 P.2d at 1149 (stating "mere duties of regulation and inspection of private property" will not alone suffice to establish a waiver of sovereign immunity under § 41-4-6 NMSA 1978).

Johnson further contends that statutory and administrative law impose a duty on the CYFD Defendants. He argues that, before placing Grace in the Bogey home, the CYFD Defendants had a duty to conduct a home visit, to interview in the home, and to determine the capacity of Bogey to shelter, feed, and clothe Grace. See §§ 32A-5-12 to 32A-5-14 NMSA 1978; NMAC 8.26.3.18 (stating that the Defendants must conduct a pre-placement study, including a study of the physical and social home environment). Johnson argues that, before the adoption could go through, the CYFD Defendants were under a duty to conduct a post placement investigation, including a number

-16-

of home visits, so that they could make the required post-placement statement to the Court regarding the prospective adoptive home.  See § 32A-5-31 NMSA 1978; NMAC 8.26.3.32.  Johnson also argues that, if any CYFD employee suspected child abuse or neglect in the adoptive home, he or she was under a duty to investigate and then, if the suspicion was substantiated, determine that the family was no longer eligible to adopt children in CYFD's custody.  See NMAC 8.26.2.21.  The CYFD Defendants were also under a duty to provide post placement services to Grace and Veronica Bogey until the state court finalized the adoption.  See NMAC 8.26.2.20(A).

Additionally, Johnson asserts that, because CYFD subsidized the adoption, see Amended Complaint ¶ 16, at 4, and because Grace was a special needs child who was "difficult to place," § 32A-5-44(B) NMSA 1978, the CYFD Defendants had a duty to maintain a level of control and involvement in the maintenance of the Bogey home, even after the state court finalized the adoption, see NMAC 8.26.2.15(D) (providing that the available subsidies include maintenance payments to meet the child's existing day to day needs).  CYFD had a duty to review the subsidy agreement annually and to redetermine eligibility based on whether the child is still in the home.  See NMAC 8.26.2.15(K).  Further, because an adoptive parent receiving a subsidy may lose the subsidy if he or she does not notify CYFD of, among other things, a change of address or a change in family needs or circumstances, Johnson contends that CYFD necessarily had a duty to maintain some level of control in the maintenance of the Bogey home.  See NMAC 8.26.2.15(G).  Again, Johnson states that he believes that the evidence will demonstrate that the CYFD Defendants were under a duty to exercise more control in the maintenance and operation of the Bogey home, than they would have been required to do in an adoption of a child without special needs.  However, Johnson has not pointed to any evidence that proves this point.

Again, Johnson runs into the problem of too quickly equating home with the house structure. Johnson has not pointed the Court to any New Mexico statutory or administrative law that imposes upon the CYFD Defendants specific duties to operate and maintain Bogey's structure.

Moreover, § 32A-5-37(B) NMSA 1978 (1993), provides that, after the adoption, "the adoptee and petitioner [adoptive parent] shall sustain the legal relationship of parent and child as if the adoptee were the biological child of the petitioner and the petitioner were the biological parent of the child."  Defendant Veronica Bogey adopted Grace before the murder occurred.  Not only did Johnson not allege "a duty to maintain the Bogey home" post-adoption, but the adoption statutes preclude any such duty by decreeing that the post-adoption relationship is as if the adoptive parent were the biological parent of the child.

Johnson fails to allege that the CYFD Defendants had a duty to operate and maintain the Bogey residence.  His allegations, as a matter of law, fail to state a claim for relief against CYFD and the individual CYFD social workers and social worker supervisors.

**2.      The Complaint Does Not Allege a Condition at the Home that Created a Danger to the General Public.**

In addition, Count V does not allege another essential element of a claim for relief under  § 41-4-6: that the alleged physical abuse and homicide of an adopted daughter inside the mother's residence created some sort of "danger to the general public."

The parties dispute the interpretation of New Mexico law.  The CYFD Defendants contend that New Mexico requires that the condition in question must create a danger to the general public before § 41-4-6 NMSA 1978 waives governmental immunity; Johnson contends that the condition need only create a danger to an individual or group of individuals.  The CYFD Defendants have the

-18-

better side of this argument.

Regarding the element of § 41-4-6 NMSA 1978 requiring that the condition in the building or equipment at issue create a danger to the general public, the Supreme Court of New Mexico construed and applied § 41-4-6 in Espinoza v. Town of Taos, 120 N.M. 680, 905 P.2d 718 (1995). The case involved a five-year-old child who fell off a slide at a public park and was injured while attending the Town of Taos' summer day camp program. Although the child's injury involved both a "public park" and "equipment," §41-4-6 NMSA 1978, the Supreme Court held that "the critical question is whether the [allegedly unsafe] condition creates a potential risk to the general public." Espinoza v. Town of Taos, 120 N.M. at 683, 905 P.2d at 721. The Supreme Court stated that "[a]ll cases cited by [the plaintiffs] concern negligent conduct that itself created unsafe conditions for the general public," but that there were no such conditions in Espinoza. Id. 120 N.M. at 684, 905 P.2d at 722. The Supreme Court thus concluded that, under the circumstances, there was no waiver of immunity under §41-4-6 of the Tort Claims Act.

The Court of Appeals held to the same effect in Baca v. State, 1996-NMCA-021, 911 P.2d 1199, cert. denied, 121 N.M. 375, 911 P.2d 883 (1996). There, the Court of Appeals said:

Section 41-4-6 was recently and definitely construed in Espinoza v. Town of Taos. . . .

* * * *

The thrust of the Espinoza opinion is thus that, for immunity to be waived [under Section 41-4-6], there must be (1) a condition that (2) creates a danger to the general public.

* * * *

While we candidly admit that the distinctions drawn in the cases in the area of waiver of immunity are exceedingly fine, we believe that the Supreme Court's most recent

-19-

pronouncement establishes the two-part test of (1) the condition that (2) creates a danger to the public.

Baca v. State, 1996-NMCA-021 at ¶¶ 9, 12, 911 P.2d at 1200, 1201.  Again, in Leithead v. City of Santa Fe, 1997-NMCA-041, 940 P.2d 459, the Court of Appeals held that "the essential ingredient to liability under [sec. 41-4-6 of the Tort Claims Act]" is "a condition on the premises that creates a potential risk to the general public. . . ."  Leithead v. City of Santa Fe, 1997-NMCA-041 at ¶ 23, 940 P.2d at 465 (noting that immunity was waived under § 41-4-6 because the situation created a dangerous "condition on the [physical] premises" that affected the swimming public at large.).

Under New Mexico law, therefore, there is no waiver of sovereign immunity under § 41-4-6 of the Tort Claims Act unless the negligence of public employees causes some condition in a building or premises which in turn creates a danger to the general public.  See Espinoza v. Town of Taos, 120 N.M. at 684, 905 P.2d at 722; Baca v. State, 1996-NMCA-02 at  ¶¶ 9, 12, 911 P.2d at 1200, 1201; Leithead v. City of Santa Fe, 1997-NMCA-041 at ¶ 15, 940 P.2d at 463.

Although decided subsequent to those three cases, the Supreme Court of New Mexico's opinion in Cobos does not change their holdings, or the result here, for four reasons.  First, although the Supreme Court decided Cobos after the decisions in Espinoza, Baca, and Leithead, the Supreme Court in Cobos did not address, discuss, question, or overrule the holdings of Espinoza, Baca and Leithead to the extent that they held there is no waiver of sovereign immunity under § 41-4-6 unless a condition on the premises created some danger or risk of harm to the general public, rather than to one individual person.

Second, the Supreme Court in Cobos reviewed the dismissal of a complaint and adjudicated only one issue: whether the statutory term "any building" in § 41-4-6 NMSA 1978 includes a

-20-

privately owned building.   Here, Johnson assumes for purposes of this motion that the Bogey

residence constituted a "building" within § 41-4-6.  The Court in <u>Cobos</u> stated:

> We hold that Section 41-4-6 applies to "any building," public or private, that public
> employees have a duty to operate and maintain with ordinary care.  The Authority
> employees had duties of operation and maintenance of this home as part of their
> control of a housing project.  Therefore, we reverse [the district court's dismissal of
> the complaint] and remand for further proceedings as to the individual defendants.

1998-NMSC-049 at ¶ 20, 970 P.2d at 1151.  As discussed earlier, the Bogey home does not fit within

this definition.

Third, because of <u>Cobos'</u> procedural posture -- appellate review of a motion to dismiss which

the district court had granted solely on the building's ownership -- the Supreme Court's opinion does

not reflect what other allegations the complaint contained, <u>i.e.</u>, whether the complaint expressly or

implicitly alleged that the condition at issue created potential risk to the general public, in accordance

with the holdings of <u>Espinoza</u>, <u>Baca</u>, and <u>Leithead</u>.

Finally, the condition at issue in <u>Cobos</u> -- a defect in the fireplace flue which started a fire,

coupled with the absence of a smoke detector, <u>see</u> <u>Cobos v. Dona Ana County Housing Auth.</u>, 1998-

NMSC-049 at ¶ 3, 970 P.2d at 1144 -- is one which may pose a "potential risk to the general public."

As a matter of law, construing the allegations set forth in the complaint in their most favorable

light to Johnson, there is no allegation or legitimate, logical inference that any condition in the Bogey

home constituted "a danger to the general public."  Thus, Count V does not state a claim upon which

the Court can grant relief against the CYFD Defendants under § 41-4-6 NMSA 1978.

In conclusion, the Amended Complaint does not allege sufficient facts to support a finding

of waiver of the CYFD's Defendants' immunity under § 41-4-6 of the New Mexico Tort Claims Act.

**III.    SECTION  41-4-12  DOES  NOT  PROVIDE  A  WAIVER  OF  SOVEREIGN**

**IMMUNITY.**

Count V also does not allege an essential element of a claim for relief under § 41-4-12: that the individual CYFD Defendants -- social workers or supervisors -- were "law enforcement officers" within the definition and meaning of the Tort Claims Act.

Count V alleges: "The CYFD Defendants are akin to law enforcement officers and acted as such in their handling of the investigation into allegations of criminal abuse of Grace. At all times material hereto they were acting within the scope of their duties as law enforcement officers and their sovereign immunity is waived." Amended Complaint ¶ 62, at 12. Section 41-4-12 of the Tort Claims Act waives immunity where law enforcement officers cause one or more of nine specified torts, or the "violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico. . . ." § 41-4-12 NMSA 1978. Apart from the fact that the Amended Complaint's allegations are at tension with other allegations in the Amended Complaint that all CYFD Defendants are either social workers or social work supervisors, see id. ¶¶ 5, 7, 42, at 2, 3, 9, the CYFD Defendants do not, as a matter of law, constitute a "law enforcement officer" within the meaning of the New Mexico Tort Claims Act.

The Tort Claims Act defines "law enforcement officer" as "a[ny] full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor. . . ." § 41-4-3(D) NMSA 1978 (1996 Repl.). There are several problems with Johnson's contention that the CYFD Defendants are "law enforcement officers."

First, Johnson alleges that the CYFD Defendants are "akin" to law enforcement officers. In

-22-

the Amended Complaint, Johnson does not allege -- in professional candor to the Court -- that any

CYFD Defendant's authority or "principal duties under law" include the definitional hallmarks of a

"law enforcement officer" under the Tort Claims Act: "hold[ing] in custody any person accused of

a criminal offense" or "maintain[ing] public order" or "mak[ing] arrests for crimes."  § 41-4-3(D)

NMSA 1978.

New Mexico law requires courts to give the Legislature's statutory language a common,

everyday meaning.  See State ex rel. Duran v. Anaya, 102 N.M. 609, 611, 698 P.2d 882, 884

(1985)(stating that words of a statute are given "ordinary and usual meaning").  Moreover, New

Mexico law requires courts to construe statutes "according to [their] obvious spirit or reason" and

to avoid any construction leading to "injustice, absurdity or contradiction."  State ex rel. Helman v.

Gallegos, 117 N.M. 346, 348, 871 P.2d 1352, 1354 (1994).

The statutory waiver of immunity for "law enforcement officers" requires, at this stage, the

allegation that the person is a law enforcement officer as the statute defines that phrase.  "[A]kin" to

a law enforcement officer is, as a matter of law, insufficient to waive sovereign immunity under § 41-

4-12 NMSA 1978.  See, e.g., Montes v. Gallegos, 812 F.Supp. 1165, 1172 (D.N.M. 1992)(holding

that mayor is not a law enforcement officer under Tort Claims Act, notwithstanding his statutory

authority and obligation to exercise law enforcement functions); Dunn v. McFeeley, 1999-NMCA-

084, ¶ 24, 984 P.2d 760, 767 (holding OMI Medical Investigator and crime laboratory technician are

not law enforcement officers under the Tort Claims Act), cert. denied, 127 N.M. 389, 981 P.2d 1207

(1999)); Coyazo v. State, 120 N.M. 47, 51, 897 P.2d 234, 238 (Ct. App. 1995)(holding that the

District Attorney and their staff are not law enforcement officers under § 41-4-3(D)); Callaway v.

New Mexico Department of Corrections, 117 N.M. at 641, 875 P.2d at 397 (holding that correctional

-23-

officers at penitentiary are not law enforcement officers under the Tort Claims Act, notwithstanding their statutory power to make arrests); Dunn v.State ex rel. Taxation and Revenue Dep't, 116 N.M. 1, 4, 859 P.2d 469, 472 (Ct. App. 1993)(holding that Director of Motor Vehicle Division is not a law enforcement officer under Tort Claims Act, notwithstanding his statutory power to make arrests); Vigil v. Martinez, 113 N.M. 714, 721, 832 P.2d 405, 412 (Ct. App. 1992)(holding that probation and parole officers are not law enforcement officers under Tort Claims Act); Abalos v. Bernalillo County District Attorney's Office, 105 N.M. at 560-61, 734 P.2d at 800-801 (holding that the District Attorney and their staff are not law enforcement officers under § 41-4-3(D) NMSA 1978); Anchondo v. Corrections Department, 100 N.M. 108, 111, 666 P.2d 1255, 1258 (1983)(holding that the Secretary of Corrections and the Warden of a state penitentiary are not law enforcement officer under Tort Claims Act); Candelaria v. Robinson, 93 N.M. 786, 790, 606 P.2d 196, 200 (Ct. App. 1980)(holding that the District Attorney and their staff are not law enforcement officers under § 41-4-12 NMSA 1978).

In addition, the plain terms of § 41-4-12 NMSA 1978, and the New Mexico cases interpreting the statute, require that the "principal duties" of a person be traditional law enforcement functions before that person will be considered a "law enforcement officer" under the statute: "[T]he primary inquiry concerns review of the employee's day-to-day duties, responsibilities, and activities. These duties and responsibilities are then measured against the admittedly amorphous standard of the duties and activities traditionally performed by law enforcement officers." Coyazo v. State, 120 N.M. at 50, 897 P.2d at 237 (noting that it is "clear" that District Attorneys and their staff do not engage "in the same activities as the officer on patrol" and thus are not "law enforcement officers" under Tort Claims Act).

Johnson does not allege that the social workers he has sued have any day-to-day duties, responsibilities, and activities that involve the hallmarks of a "law enforcement officer" under the Tort Claims Act.  See Baptiste v. City of Las Cruces, 115 N.M. 178, 181, 848 P.2d 1105, 1108 (Ct. App. 1993)(noting that the scope of "maintain public order" in § 41-4-3(D) NMSA 1978 encompasses only duties "traditionally performed by law enforcement officers").  The CYFD Defendants are not law enforcement officers.  See § 32A-4-3(A) NMSA 1978 (statute distinguishes between "law enforcement officer" and "social worker").  Count V does not state a cause of action.

**IV.     COUNT VI DOES NOT STATE A VALID CLAIM FOR RELIEF.**

Count VI does not state a claim upon which the Court can grant relief.  Count VI does not specifically identify any waiver of immunity under the Tort Claims Act independent of Count V, but that alone does not warrant dismissal.  Paragraph 65 of the Amended Complaint incorporates by reference paragraphs 1-64, including paragraphs 61-63, wherein the tort claims waivers are more specifically alleged.

However, there is no applicable waiver of immunity, different from the two sections, §§ 41-4-6 and 41-4-12 NMSA 1978, that the Court has already found inapplicable.  The State of New Mexico and CYFD have immunity from liability for any tort except as waived by §§ 41-4-5 to 41-4-12 of the New Mexico Tort Claims Act.  § 41-4-4A NMSA 1978.  It is a plaintiff's burden to identify one of the specific statutory sections allegedly waiving immunity.  See Rubio v. Carlsbad Municipal School District, 106 N.M. 446, 448, 744 P.2d 919, 921 (Ct. App. 1987).

Under the circumstances, the Court will dismiss with prejudice Count VI of the Complaint for failure to state a claim upon which the Court can grant relief against CYFD.

**CONCLUSION**

-25-

Accepting all factual allegations as true, Counts V and VI of the Amended Complaint do not, as a matter of law, state claims upon which the Court can grant relief against the CYFD Defendants. Accordingly, the Court has dismissed those two counts of the complaint with prejudice as to CYFD. The Court also dismissed those two counts as to CYFD Defendants Holmes, Vehstedt, Zarate, Saenz, Perez, Villareal, Encinias, Bowman and Narvaez.

_____
UNITED STATES DISTRICT JUDGE

Paul Kennedy
Mary Y.C. Han
Adam S. Baker
Kirtan Khalsa
Kennedy & Han, P.C.
Albuquerque, New Mexico

 *Attorneys for the Plaintiffs*

Tim Flynn-O'Brien
Bryan & Flynn-O'Brien
Albuquerque, New Mexico

 *Attorneys for Defendants Bonnie Vehstedt, Lydia R. Saenz,*
 *Karen Zarate, and Virginia Villareal*

Randolph B. Felker
Felker, Ish, Ritchie, & Geer, P.A.
Santa Fe, New Mexico

 *Attorneys for Defendants Anne Holmes, Sonia (Sanchez) Perez,*
 *Ginger Bowman, Denise H. Narvaez, Vivian Encinias,*

Jerry A. Walz
Walz and Associates

-26-

Cedar Crest, New Mexico

*Attorneys for Defendants Veronica Bogey and Terry Bogey*

Michael Dickman
Law Office of Michael Dickman
Santa Fe, New Mexico

*Attorneys for Defendant Children, Youth, and Families Department*