IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SCOTT JOHNSON, as personal representative of
the estate of GRACIELA CANO a/k/a GRACE
LEE BOGEY, deceased, and LORENA TORREZ,

       Plaintiffs,

vs.                                    No. CIV 02-1239 JB/KBM

ANNE HOLMES, BONNIE VEHSTEDT,
KAREN ZARATE, LYDIA R. SAENZ, SONIA
PEREZ, VIRGINIA VILLAREAL, VIVIAN
ENCINIAS, GINGER BOWMAN, DENISE H.
NARVAEZ, JANE DOE, and JOHN DOE in their
individual capacities, the NEW MEXICO
CHILDREN YOUTH AND FAMILIES DEPARTMENT,
TERRY BOGEY, a/k/a TERI BOGEY, and
VERONICA BOGEY,

       Defendants.

**MEMORANDUM OPINION**

    **THIS MATTER** comes before the Court on the CYFD Defendants Holmes, Perez, Encinias,

Bowman and Narvaez' Motion to Dismiss Count VII, filed March 13, 2003 (Doc. 49).  The primary

issue is whether § 671(a)(9) of the Adoption Assistance and Child Welfare Act ("AACWA") --

directly or through 42 U.S.C. § 1983 -- confers a private right of action for damages.  Because the

Court finds that Congress did not intend to create a private right of action under 42 U.S.C. §

671(a)(9) for damages, the Court has granted the motion and dismissed Count VII.[1]

---

[1] The Court has previously entered an Order granting CYFD Defendants Holmes, Perez,
Encinias, Bowman and Narvaez' Motion to Dismiss Count VII, March, 30, 2004 (Doc. 192).  This
opinion is intended to explain more fully the Court's reasoning for its previous Order.

## **FACTUAL BACKGROUND**

For purposes of this motion, the Court must assume Johnson's allegations are true.

Plaintiffs Scott Johnson and Lorena Torrez are residents and citizens of the State of New Mexico. See Amended Complaint For Civil Rights Violations, Breach of Contract, Tort Claims, and Damages ¶ 3, at 2, filed September 4, 2002 in the Second Judicial District, County of Bernalillo, State of New Mexico, and attached to Notice of Removal, filed October 2, 2002 (Doc. 1)("Amended Complaint"). Johnson is the personal representative of the estate of Graciela Cano a/k/a Grace Lee Bogey ("Grace"). See id. at 1. Torrez is the birth mother of Grace. See id. ¶ 11, at 3. Defendants Anne Holmes, Sonia Perez, Vivian Encinias, Ginger Bowman and Denise H. Narvaez (the "CYFD Defendants") were, at all relevant times, employees of the Children Youth and Families Department ("CYFD"), a governmental agency of the State of New Mexico. See id. ¶¶ 4-5, at 2. The CYFD Defendants were involved in securing relinquishment of parental rights by Grace's natural mother, in placing Grace in Defendant Veronica Bogey's home, and in Veronica Bogey's adoption of Grace. See id. ¶¶ 12-13, at 3.

On January 2, 1998, CYFD obtained legal custody of Johnson's decedent, Grace, a special needs child born with spinabifida on July 15, 1997, to Torrez. See id. ¶ 11, at 3. Grace was in the state's legal custody and presumably in foster care from January 2, 1998 until November 6, 1999. See id. ¶¶ 11, 15, at 3, 4.

In or around March 1999, the individual CYFD Defendants obtained a relinquishment of parental rights from Torrez by promising her that they would provide Grace with a safe home, and find an adoptive family who would love and protect her and be willing and able to provide for all of Grace's needs, including her special medical needs. See id. ¶ 12, at 3. This Relinquishment freed

-2-

Grace for adoption.  See id. ¶ 14, at 3.  Johnson alleges that the parties entered a formal contract on March 12, 1999, whereby they agreed that, in exchange for the relinquishment of parental rights, CYFD would assume responsibility for Grace.  See id. ¶ 13, at 3.

On November 6, 1999, after conducting only two short home visits with Veronica Bogey, and despite warning signs that she was unfit to care for Grace, the CYFD Defendants placed Grace in Veronica Bogey's home for adoption.  See id. ¶ 15, at 4.  Johnson alleges that CYFD placed Grace with Veronica Bogey without conducting an adequate and comprehensive home study and background investigation of Veronica Bogey and despite the fact that Grace's foster parents raised concerns about Veronica Bogey's fitness to parent Grace.  See id.  CYFD paid Veronica Bogey $487.00 as a monthly stipend upon the placement of Grace.  See id. ¶ 16 at 4.

On March 23, 2000, the CYFD Defendants received a report that Veronica Bogey was physically abusing Grace.  See id. ¶ 19, 23, at 4.  Specifically, Grace's home health nurse reported that (i) in or around February 2000, she observed a large purple bruise on the left side of Grace's face that Veronica Bogey admitted she had caused; (ii) on or about March 16, 2000, she observed deep scratches on Grace's abdomen which Veronica Bogey admitted she had caused and which were so severe that they would cause scarring on Grace; (iii) on or about March 20, 2000, she observed Grace's hand to be swollen and bruised; and (iv) on March 21, 2000, she noticed fingernail marks on Grace's back and neck.  See id. 20, at 4-5.  The CYFD Defendants did not immediately and thoroughly investigate the allegations of abuse and made only one brief home visit to Veronica Bogey on April 3, 2002, despite their knowledge of facts substantiating the abuse report.  See id. ¶ 21, at 5.

Rather than protect Grace, the CYFD Defendants left her in the home of her abuser, and

-3-

despite efforts to prevent Veronica Bogey's adoption of Grace by persons concerned with the abuse, the CYFD Defendants made recommendations to the state court that directly resulted in the court granting the adoption petition on July 31, 2000.  See id. ¶ 22, at 5.  Veronica Bogey, with the CYFD Defendants' support and financial backing, adopted Grace on or about July 31, 2000.  See id. ¶ 24, at 5.  Johnson contends that the CYFD Defendants did not report known or suspected instances of abuse.  Johnson does not allege that Grace was receiving aid under Part A or Part B of 42 U.S.C. § 671.

On or about September 2, 2000, Veronica Bogey and Terry Bogey, a caregiver of Grace, killed three-year-old Grace.  See id. ¶ 26, at 5-6.  The State of New Mexico subsequently charged the Bogeys with homicide.  See id.  Grace's autopsy revealed massive swelling and bleeding in her brain caused by trauma, and the Office of the Medical Investigator designated the manner of death as homicide.  See id.  The State of New Mexico has charged Veronica and Terry Bogey with the homicide.  See id.  Grace's autopsy also revealed a broken arm, which doctors determined had been broken two to several weeks before September 2, 2000; the Bogeys did not seek medical attention for this broken arm, indicating that Grace suffered a pattern of physical abuse at the hands of Veronica and Terry Bogey.  See id. ¶ 27, at 6.

During the six-month period that Grace resided with Veronica Bogey, the CYFD Defendants did not report known or suspected instances of physical abuse and maltreatment of Grace by Veronica.  See id. ¶¶ 76, at 15.  The CYFD's alleged violation of the AACWA proximately caused injuries to Grace.  See id. ¶ 78, at 15.

## PROCEDURAL BACKGROUND

Johnson asserts, in Count VII of his Amended Complaint, that the "Defendants failed to

-4-

report the known or suspected instances of physical abuse and maltreatment of Grace by Defendant Veoronica Bogey as required by the [AACWA], despite evidence that Grace's health and welfare were being threatened." Amended Complaint ¶ 76, at 15.   Johnson contends that Grace was a beneficiary of the Act's requirments, and that "the [AACWA] unambiguously confers upon her (or her duly authorized representative) a right to enforce the requirements by private suit."   Id. ¶ 79, at 15.   In Count VII of the Amended Complaint, Johnson seeks recovery of an award of compensatory and punitive damages, costs, and attorneys fees against Holmes, Perez, Encinias, Bowman, and Narvaez under AACWA for the CYFD Defendants' alleged violation of the AACWA, 42 U.S.C. §§ 620-628, 670-679A.   See id. at 15-16.

In his Amended Complaint, Johnson does not specify upon which AACWA provision he relies for his claim that the CYFD  Defendants violated the statute, but refers to the requirement imposed upon the State of New Mexico to submit a plan for approval by the Secretary of Health and Human Services and the requirement to "provide reports of physical abuse to appropriate agencies or official." Amended Complaint ¶¶ 74-75, at 15.   Johnson alleges in general that the Defendants "failed to report known or suspected instances of physical abuse and maltreatment of Grace by Defendant Veronica Bogey as required by the Act . . . ."   Amended Complaint ¶ 76, at 15.   These allegations appear to be drawn from 42 U.S.C. § 671(a)(9).   Johnson contends that the individual Defendants are personally liable under this section because they allegedly did not report known or suspected instances of abuse involving Grace.   Moreover, Johnson's Response to the motion to dismiss Count VII indicates that he relies on § 671(a)(9) as the basis for his claim for money damages under the AACWA.   See Plaintiffs' Response in Opposition to Motion to Dismiss Count VII at 4, filed March 31, 2003 (Doc. 68).

Holmes, Perez, Encinias, Bowman, and Narvaez move the Court for an Order dismissing Count VII of the Amended Complaint. The Defendants have moved to dismiss this claim on the grounds that § 671(a)(9) does not confer a private cause of action against individual public employees for money damages. Additionally, the Defendants assert qualified immunity.

## STANDARD OF REVIEW

The Defendants move to dismiss Count VII for failure to state a claim upon which relief may be granted, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] The "accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

"When a federal court reviews the sufficiency of a complaint [under rule 12(b)(6)], before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. at 236. Thus, in considering and determining a motion to dismiss for failure to state a claim, the trial court must liberally construe the pleadings, accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in the plaintiff's favor. See Bauchman for Bauchman v. West High School, 132 F.3d 542, 550 (10th Cir. 1997); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). The

---

[2] Although the CYFD Defendants do not specifically identify rule 12(b)(6) -- or any rule -- as the grounds for their motion, the motion's posture and arguments indicate the CYFD Defendants' reliance on the standards for dismissal under rule 12(b)(6). The Court will, therefore, presume that the CYFD Defendants move pursuant to rule 12(b)(6).

Court may dismiss the complaint only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." Conley v. Gibson, 355 U.S. at 45-46.

The trial court need not, however, accept the plaintiff's conclusions of law or alleged application of law to the alleged facts. See Olpin v. Ideal Nat'l Ins. Co., 419 F.2d 1250, 1255 (10th Cir. 1969)("[N]either the trial court nor this court is bound to accept mere legal conclusions" in evaluating a motion to dismiss.), cert. denied, 397 U.S. 1074 (1970). Further, if the plaintiff fails to allege facts sufficient to entitle them to the relief requested, the court should grant the motion. See Sanchez v. Sanchez, 777 F. Supp. 906, 917 n. 9 (1991).

## LAW ON QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from civil damages in § 1983 actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises qualified immunity as a defense, the plaintiff must – to overcome the qualified immunity defense -- demonstrate: (i) that the defendant's actions violated a constitutional or federal statutory right; and (ii) that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue. See Albright v. Rodriguez, 51 F.3d 1531, 1534, 1535 (10th Cir. 1995). When qualified immunity is asserted, the Court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right at all. See Siegert v. Gilley, 500 U.S. 226, 232 (1991); Maldonado v. Josey, 975 F.2d 727, 729 (10th Cir. 1992), cert. denied, 507 U.S. 914 (1993). If the plaintiff has asserted the violation of a constitutional right, the court must then determine whether that right had been clearly established so that a

reasonable official in the defendant's situation would have understood that his conduct violated that right. See Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Ordinarily, to demonstrate the law was clearly established at the time of the relevant events, the plaintiff must show that there was a Supreme Court or Tenth Circuit opinion on point or that his proposition is supported by the weight of authority from other courts. See Armijo v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1260 (10th Cir. 1998); Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995); Medina v. City & County of Denver, 960 F.2d 1483, 1498 (10th Cir. 1992).

In Del A. v. Edwards, 855 F.2d 1148 (5th Cir. 1988), the United States Court of Appeals for the Fifth Circuit stated:

> The ultimate test is whether a "reasonable official would understand that what he is doing violates that right." [quoting Anderson, 483 U.S. at 640]. The test is not whether a reasonable official would understand that he ultimately faces possible liability. Under the latter test, an official would be accorded decision making protection not only when the right is not clearly established, but also when the right is clearly established but the question of whether the individual has a private right of action for damages is unclear. Such broad protection is unnecessary to protect the integrity of the decision-making process; if the right is clearly established so that a reasonable official would understand how the law requires him to act, the official will know what to do to avoid possible liability.

Id. at 1152. The Fifth Circuit went on to hold in Del. A. that the district court properly denied the defendants' motion to dismiss the plaintiff's AACWA claims on qualified immunity grounds. See id. at 1154. In short, the law only requires that a plaintiff demonstrates that a reasonable official would understand that what he is doing violates a federal statutory right. See Anderson v. Creighton, 483 U.S. at 640. The law of qualified immunity does not require that a plaintiff demonstrate that her right to recover monetary damages, i.e., their remedy, was clearly established when the violation of her

-8-

rights occurred.

### LAW REGARDING PRIVATE CAUSES OF ACTION

To establish a private right of action, Johnson must show that the AACWA manifests Congressional intent to create a private right and also a private remedy. See Alexander v. Sandoval, 532 U.S. 275, 286 (2001). Congressional intent is the only basis upon which a private right of action may be inferred. See Chaffin v. Kansas State Fair Board, 348 F.3d. 850, 857 (10th Cir. 2003) (citing Alexander v. Sandoval, 532 U.S. at 286 (2001); Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1267 (10th Cir. 2004). "Without it, a cause of action does not exist and courts may not create one no matter how desirable that might be as a policy matter, or how compatible with the statute." Alexander v. Sandoval, 532 U.S. at 286-87 (2001).

To determine Congressional intent, the Court examines the statute for "rights-creating language." Id at 288 (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 690, n.13 (1979)).  Such language "explicitly confers a right directly on a class of persons that includes the plaintiff" and identifies "the class for whose especial benefit the statute was enacted." Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1267 (10th Cir. 2004) (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 690 n.13, 688 n.9 (1979) (internal quotation marks omitted)). The Court also considers "the relation between the specific provision at issue and the related statutory scheme." Boswell v. Skywest Airlines, 61 F.3d at 1267(citing Love v. Delta Airlines, 310 F.3d 1347,1353 (11th Cir. 2002).

### LAW REGARDING FEDERAL RIGHTS ENFORCEABLE UNDER §1983

In 2002, the Supreme Court issued its most recent decision regarding federal rights enforceable under §1983. See Gonzaga University v. Doe, 536 U.S. 273,  283 (2002).  In Gonzaga University v. Doe, the Supreme Court explained that  "whether a statutory violation may be enforced

through §1983 'is a different inquiry than that involved in determining whether a private right of

action can be implied from a particular statute.'" Id. at 283 (quoting Wilder v. Virginia Hosp. Assoc.,

493 U.S. 498, 508 n.9 (1990)). However, in either case, the court "must first determine whether

Congress intended to create a federal right." Id. The Supreme Court indicated that implied right of

action cases were not separate and distinct from §1983 cases and "implied right of action cases should

guide the determination of whether a statute confers rights enforceable under § 1983." Id.

The Gonzaga Court also attempted to resolved some confusion regarding the interpretation

of Blessing v. Freestone, 520 U.S. 329 (1997). In Blessing v. Freestone, the Supreme Court set

forth a three part test to determine whether Congress intended to create a private right of action

under a given federal statute when such intent is not readily apparent from the statute's language: (i)

whether "Congress intended that the provision benefit the plaintiff"; (ii) whether "the right assertedly

protected by the statute is so "vague and amorphous" that its enforcement would strain judicial

competence"; and (iii) whether the provision unambiguously imposes a binding obligation on the

State. 520 U.S. at 340. The Gonzaga Court explained:

> [C]onfusion has led some courts to interpret Blessing as allowing plaintiffs to enforce
> a statute under § 1983 so long as the plaintiff falls within the general zone of interest
> that the statute is intended to protect; something less than what is required for a
> statute to create rights enforceable directly from the statute itself under an implied
> private right of action. Fueling this uncertainty is the notion that our implied private
> right of action cases have no bearing on the standards for discerning whether a statute
> creates rights enforceable by § 1983 . . . We now reject the notion that our cases
> permit anything short of an unambiguously conferred right to support a cause of
> action brought under § 1983.

Gonzaga University v. Doe, 520 U.S. at 340.

The Gonzaga Court, although not specifically overruling Blessing, declined to apply the

Blessing factors in that case. Rather, the Supreme Court analyzed the language of the statute based

-10-

on the rules set out in implied cause of action cases.  <u>See</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. at . 283-88 (citing <u>Touche Ross Co. v. Redington</u>, 443 U.S. 560, 576 (1979); <u>Cannon v. University of Chicago</u>, 441 U.S. 677, 690-93; <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286, 288, 289). The <u>Gonzaga</u> Court explained that to create rights, the text of a statute must contain "rights creating" language.  <u>Id</u>. at 287 (quoting <u>Alexander v. Sandoval</u>, 532 U.S. a 288-289; <u>Cannon v. University of Chicago</u>, 441 U.S. at 692, n. 13).  The statute must be  "phrased in terms of the persons benefitted." <u>Id</u>. at 287, 284 (quoting <u>Cannon v. University of Chicago</u>, 441 U.S. at 692, n. 13).

The <u>Gonzaga</u> Court also discussed the difference between implied right of action claims and actions to enforce federal statutes brought under §1983.  <u>See</u> <u>id.</u> at 284. The Supreme Court explained that, to establish that a right is enforceable under §1983, a plaintiff "[does] not have the burden of showing an intent to create a private remedy because §1983 generally supplies the remedy for rights secured by federal statutes." <u>Id</u>. Upon demonstration that the Act confers an individual right, the right is presumptively enforceable by §1983. <u>See</u> <u>id</u>.  The burden then shifts to the Defendants to rebut this presumption by "showing that Congress specifically foreclosed a remedy under §1983." <u>Id</u>. at 285 n. 4 (quotations omitted).  The Defendants can show that Congress expressly foreclosed a remedy, through specific evidence from the statute, or "impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement." <u>Id.</u>


## LAW REGARDING AACWA

In the AACWA, Congress established requirements with which States must comply to receive federal reimbursement for certain expenses incurred in the provision of child welfare services. Pursuant to the AACWA, as a condition of receiving federal funds for foster care, each state agrees

-11-

to adopt a state plan meeting certain enumerated specifications. These specifications are set out in

42 U.S.C. § 671(a).

Section 671(a)(9) provides that, to qualify for federal money under the Act, a State must

submit a plan that provides that the State agency will report known or suspected instances of abuse.

Specifically, § 671(a)(9) provides:

> (a) In order for a State to be eligible for payments under this part, it shall have a plan
> approved by the Secretary which:
>
>                          * * * *
>
>   (9) provides that the State agency will:
>
> > (A) report to an appropriate agency or official, known or suspected
> > instances of physical or mental injury, sexual abuse or exploitation, or
> > negligent treatment or maltreatment of a child receiving aid under part
> > B of this subchapter or this part under circumstances which indicate
> > that the child's health or welfare is threatened thereby; and
> >
> > (B) provide such information with respect to a situation described in
> > subparagraph (A) as the State agency may have[.]

42 U.S.C. § 671(a)(9).

In Suter v. Artist M, 503 U.S. 347 (1992), a class action suit, the plaintiffs sought declaratory

and injunctive relief pursuant to the AAWCA. The Supreme Court held that § 671(a)(15) of the

AAWCA did not confer an implied right of action or a right enforceable under § 1983. The Supreme

Court also concluded that Congress did not intend to create a private remedy and thus no implied

cause of action could be implied. See Suter v. Artist M, 503 U.S. at 364.

The Supreme Court in Suter v. Artist M. also determined that the requirement imposed by

§ 671(a)(9) to include in the state plan a requirement to report the known or suspected lack of

-12-

suitability of a foster home did not "afford a cause of action." Id. at 359 n.10.  The Supreme Court

stated:  "Respondents also based their claim for relief on 42 U.S.C. § 671(a)(9) . . . .  As this

subsection is merely another feature which the state plan must include to be approved by the

Secretary, it does not afford a cause of action to the respondents any more than does the 'reasonable

efforts' clause of § 671(a)(15)."  503 U.S. at 359 n. 10.[3]

Subsequent to Suter, in 1994, Congress amended the AAWCA by adding the following

language:

> In an action brought to enforce a provision of this chapter, such provision is not to
> be deemed unenforceable because of its inclusion in a section of this chapter requiring
> a State plan or specifying the required contents of a State plan.  This section is not
> intended to limit or expand the ground for determining the availability of private
> actions to enforce State plan requirements other than by overturning any such grounds
> applied in [Suter], but not applied in prior Supreme Court decisions respecting such
> enforceability; provided, however, that such section is not intended to alter the
> holding in [Suter] that section 671(a)(15) of this title is not enforceable in a private
> right of action.

42 U.S.C § 1320a-2. The United States Court of Appeals for the Tenth Circuit recognized that this

provision expresses Congress' intent that courts should apply pre-Suter case law to determine

whether specific provisions under the AACWA allow private enforcement actions.  See Stanberry

v. Sherman, 75 F.3d 581, 584 (10th 1996) ("Basically, the Congress disavowed Suter's approach,

---

[3]  Other courts considering various subsections of the AAWCA, but not considering either subsection (a)(9) or (a)(15), have limited their reliance on Suter to its holding regarding (a)(15) and have not referenced the Supreme Court's footnote regarding (a)(9).  See Whitley v. New Mexico Children, Youth & Families Dep't, 184 F. Supp. 2d 1146, 1164 (D.N.M. 2001) (Smith, M.J.) ("In [Suter], the Supreme Court held that § 671(a)(15) does not create a private cause of action."); Marisol A. v. Giuliani, 929 F. Supp. 662, 681 (S.D.N.Y. 1996) ("[T]he [Suter] Court held that § 671(a)(15) was too vague and amorphous to provide a cause of action under § 1983 and that Congress did not intend to create the private remedy sought by plaintiffs.") (internal quotation marks and citation omitted); Jeanine B. v. Thompson, 877 F. Supp. 1268, 1284 (E.D. Wis. 1995) (noting only Suter's holding with regard to § 671(a)(15)).

while not purporting to change the decision. It also reaffirmed the approach taken in Supreme Court decisions prior to Suter."); Whitley v. New Mexico Children, Youth & Families Dep't, 184 F. Supp. 2d 1146, 1164 (D.N.M. 2001) (Smith, M.J.). Under a pre-Suter analysis, the Court determines whether a statute provides an implied right of action by determining if the statute has "rights creating" language that evidences Congressional intent to create such a right. Cannon v. Univ. of Chicago, 441 U.S. 677, 690 n.13. To determine whether a statute creates a right enforceable under §1983, the Court considers the factors set out in Wilder v. Virginia Hosp. Assoc., 493 U.S. 498 (1990). The Tenth Circuit, however, has not considered the AACWA in light of the Supreme Court's decision in Gonzaga.

After Suter and the Congressional amendment, a split of authority developed over whether various provisions of the AACWA create a private right enforceable under §1983. Compare White v. Chambliss, 112 F.3d 731, 739 (4th Cir. 1997) (finding no private cause of action under § 671(a)(10)); Whitley v. N.M. Children, Youth & Families Dept., 184 F. Supp. 2d at 1164-65 (holding §§ 671(a)(16) and (22) did not create a private cause of action); Charlie H. Whitman, 83 F. Supp. 2d 476, 489 (D.N.J. 2000) (finding no private cause of action under § 671(a)(16)); Daniel H. v. City of New York, 115 F. Supp. 2d 423, 428 (S.D.N.Y. 2000) (holding that AACWA does not create private right of action to enforce 42 U.S.C. § 671(a)(10), § 671(a)(11), or § 671(a)(16)); with Pearcy v. Douglas, Memorandum Opinion and Order, CIV. 95-307 BB/DJS (D.N.M, filed Oct. 2, 1996); Bailey v. Pacheco, No. CIV No. 96-953 LH/DJS, Memorandum Opinion and Order (D.N.M., order entered April 6, 2000) (Doc. 633); Brian A. v. Sundquist, 149 F. Supp. 2d 941, 949 (M.D. Tenn. 2000) (holding § 671(a)(10) "sufficiently specific to create a private right of action for enforcement thereof" and allowing private right of action for enforcement of rights to a written case

-14-

plan with mandated elements, a periodic review system, and a State plan providing for establishment of a State authority responsible for maintaining standards for foster family homes and child care institutions under 42 U.S.C. §§ 671(a)(10) and (16); §§ 675(1) and (5); and § 622(b)(10)(B)(ii)); Jeanine B. v. Thompson, 877 F. Supp. 1268, 1284 (E.D. Wis. 1995)(holding that the provisions of § 671(a)(2), (3), (7), and (13), requiring "reviews, monitoring, and collaboration between the state, local, and federal agencies," set forth enforceable rights and allowing private right of action for declaratory and injunctive relief under provisions of § 671(a) other than § 671(a)(15)); Marisol A. v. Giuliani, 929 F. Supp. 662, 683 (S.D.N.Y. 1996) (allowing private right of action for declaratory and injunctive relief under § 671(a)(10) and (16) of the AACWA)).

While courts have come to differing conclusions whether § 671(a) creates a private cause of action,  the parties have cited only one case in which the court determined that money damages are recoverable  by an individual under § 671(a).  See L.J. ex rel Darr v. Massinga, 838 F.2d 118 (4th Cir. 1988), cert. denied, 488 U.S. 1018. Cf. Timmy S. v. Stumbo, 916 F.2d 312, 316 n. 6 (6th Cir. 1990) (acknowledging previous holding that monetary damages not available under AACWA); Marr v. State, 2002 WL 737651 (D. Me. 2002) (finding that there is no authority for the proposition that Congress intended 42 U.S.C. §  671 to serve as the basis for money damages either directly or pursuant to an action under § 1983); Brian A. v. Sundquist, 149 F. Supp. 2d at 944; Marisol A. v. Giuliani, 929 F. Supp. at 672; Jeanine B. v. Thompson, 877 F. Supp. at 1270. The Court also found one case from this district that money damages are available.

In L.J. ex rel Darr v. Massinga, the United States Court of Appeals for the Fourth Circuit held that provisions of § 671(a)(9), regarding the reporting of allegations of child abuse, provide a cause of action for damages.  See 838 F.2d at 123. L.J. ex rel Darr v. Massinga was decided, however,

-15-

before <u>Suter v. Artist M.</u>, and the subsequent amendment of AACWA by 42 U.S.C. §  1320(a)-2.

While the Fourth Circuit has not overruled <u>Massinga</u>, the continued viability of this ruling after <u>Suter</u>

is questionable. The Fourth Circuit revisited the issue of private remedies under § 671 after <u>Suter</u> in

<u>White v. Chambliss.</u> <u>See</u> 112 F.3d at 738. In <u>White</u>, the biological mother of a deceased child sued

the state child protection agency and individual social workers involved in her child's case.  Among

other things, the plaintiff alleged a claim under § 671(a)(10). <u>See</u> <u>id.</u> at 738-39. Citing the reasoning

employed in the <u>Suter</u> decision, the <u>White</u> court held that the plaintiff had no enforceable private right

under § 671(a)(10).  Of importance to the <u>White</u> court was the <u>Suter</u> Court's determination that

Congress had included a specific enforcement provision for § 671 that did not involve private

remedies. <u>See</u> <u>id.</u> at 739 (citation omitted).  While the <u>White</u>  court did not rely on the Congressional

amendment of AACWA to support its holding, it found that the amendment did not conflict with its

conclusion.  <u>See</u> <u>id.</u> at 739 n. 4.  The Fourth Circuit  concluded that the amendment to the AACWA

following the <u>Suter</u> decision did not abrogate <u>Suter</u> and did not establish Congressional intent to

create a private cause of action. <u>See</u> <u>White v. Chambliss</u>, 112 F.3d at 739 n. 4.

The Tenth Circuit in <u>Yvonne L. v. N.M. Dep't Human Servs.</u>, 959 F.2d 883 (10th Cir. 1992),

declined to decide whether monetary damages are recoverable for an alleged violation of AACWA.

In that case, however, the court concluded that § 671(a)(10) did not support a cause of action,

because its requirement that the state agency provide care in foster homes "which are reasonably in

accord with recommended standards of national organizations. . ." was too vague and amorphous to

be judicially enforced. <u>Id.</u>  Similarly, in <u>Whitley v. N.M. Children, Youth & Families Dept.</u>, the

Honorable Leslie Smith, Magistrate Judge held that "[t]he language of Sections 671(a)(16) and (22)

and 675(1) and (5) [was] similar to the language of § 671(a)(10), which the Tenth Circuit found too

vague and amorphous to support a cause of action under § 1983." Whitley v. N.M. Children, Youth & Families Dept. 184 F. Supp. 2d at 1165.

In Pearcy v. Douglas, Memorandum Opinion and Order, CIV. 95-307 BB/DJS (D.N.M, filed Oct. 2, 1996), the Honorable Bruce D. Black, United States District Judge, concluded that §671(a)(9) - - unlike subsection (10) and (15) - - does create a private right of action. See Memorandum Opinion at 10. Judge Black conceded that "the terms of this statutory provision are not absolutely precise: the state agency has discretion in determining what agency or official is 'appropriate' and need not report instances of abuse if circumstances do not indicated that the child's health or welfare is threatened." Id. at (citing 42 U.S.C. §671(a)(9)).

> However . . . to be enforceable, a statute need not be absolutely precise, but rather need only give the courts discernible guidance regarding enforcement. *See* *Wilder*, 496 U.S. at 519-20; *Yvonne L.*, 959 F.2d at 898 (some sections of AACWA may be privately enforceable). The Court anticipates no extraordinary difficulty in determining whether any agency to which Defendants may have reported Defendant Neff's known or suspected abuse of Plaintiffs was "appropriate" within the meaning of subsection 671(a)(9). Likewise, whether Defendant Neff's alleged abuse threatened Plaintiff's health or welfare does not appear to present any inordinately complicated issues. The Court therefore finds that in the present matter, subsection 671(a)(9) is not too vague and amorphous to be judicially enforced and satisfies the third *Wilder* factor. *Wilder*, 496 U.S. at 509; *see also L.J. v. Massinga*, 838 F.2d 118, 123 (4th Cir. 1988) (Various provisions of section 671(a), including subsection (9), "spell out . . . rights in plaintiffs [and] are privately enforceable under 423 U.S.C. § 1983."), cert denied, 488 U.S. 1018 (1989).

Id. at 8-9. Accordingly, Judge Black held that §671(a)(9) created an enforceable right under §1983. He also found that there was a right to money damages.

In Bailey v. Pacheco, No. CIV No. 96-953 LH/DJS, the Honorable C. Leroy Hanson, United States District Judge, also found a right of action under § 671(a)(9). See Bailey v. Pacheco, No. CIV No. 96-953 LH/DJS, Memorandum Opinion and Order (D.N.M., order entered April 6, 2000) (Doc.

-17-

633).  Judge Hanson applied the three factor test from <u>Blessing</u> and concluded that the provision was not so vague and ambiguous that it was judicially unenforceable.  <u>See</u> <u>Bailey v. Pacheco</u>, (Doc. 633) at 22.  Nonetheless Judge Hanson found that "rights under this [§ 671(a)(9)] statutory provision were neither expressly established by, nor clearly implicit in, the existing case law," and granted the defendants qualified immunity.  <u>Bailey v. Pacheco</u>, No. CIV No. 96-953 LH/DJS, Memorandum Opinion and Order at  (D.N.M., order entered April 3, 2000) (Doc. 629) .

<u>LEGAL ANALYSIS</u>

The CYFD Defendants are entitled to a dismissal of Count VII.[4]  Section 671(a)(9) does not confer an implied private cause of action against individual public employees for money damages, nor does it confer a right enforceable under §1983.  Accordingly,  Count VII of Johnson's Amended Complaint does not state a claim for a violation of civil rights for which the Court may grant relief against the CYFD Defendants.

**I.   THE SUPREME COURT STATED IN SUTER V. ARTIST M. THAT §671(a)(9) DOES NOT CREATE A PRIVATE RIGHT OF ACTION.**

There is a question whether §671(a)(9) was properly before the Court.  The two questions presented in the Petition for Certiorari were:

> 1. Whether Section 671(a)(15) of Title IV-E of the Adoption Assistance and Child Welfare Act of 1980 (the "AAA"), 42 U.S.C. § 671(a)(15), which requires that states have a plan to ensure that "in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from his home, and (B) to make it

---

[4] Initially, Johnson's factual allegations satisfy the notice pleading requirements of rule 8(a) of the Federal Rules of Civil Procedure.  The Amended Complaint's allegations are sufficient to place the CYFD Defendants on notice of facts that would entitle Johnson to relief.  The law requires nothing more than notice.

-18-

> possible for the child to return to his home," is too vague and amorphous to create an individually enforceable right under 42 U.S.C. § 1983 ("Section 1983") in the complex area of child welfare.
>
> 2. Whether children living at home, who are not in foster care, have enforceable rights under Title IV-E of the AAA, which provides reimbursement for "foster care maintenance payments," when the state receives no federal Title IV-E funds to provide services to those children.

The Petition for Certiorari made no mention of §671(a)(9).  The issue was not briefed for the Supreme Court.  Arguably, the issue of §671(a)(9) was not properly before the Supreme Court.

Moreover, the <u>Suter</u> footnote seems to be saying that §671(a)(9) does not afford a cause of action because it is a feature of a state plan.  The amendment to the AACWA, however, indicates that a provision is not enforceable merely because it is a requirement of a plan.  Arguably, the statement about §671(a)(9) is based on a rationale that is no longer valid.

On the other hand, the Supreme Court did decide that §671(a)(9) was too vague and amorphous to create an individually enforceable right under §1983.  To the extent that the Supreme Court was rejecting a cause of action for §671(a)(9) for the same reason it rejected one for §671(a)(15), the Supreme Court's language may be instructive for, if not binding on this Court.  Unless current Supreme Court analysis or pre-<u>Suter</u> law pointed definitely away from the Supreme Court's statement in the footnote, the Court would be reluctant to disregard it and find a private right of action for money damages under §671(a)(9).

## II.   CONGRESS DID NOT INTEND TO CREATE A PRIVATE RIGHT OF ACTION FOR § 671(a)(9).

The private right of action law has not changed.  Congress must make its intentions plain.  The Court cannot say that Congress unambiguously intended to create a private right of action.

### A.   CONGRESS HAS NOT UNAMBIGUOUSLY CREATED A PRIVATE RIGHT

**OF ACTION WITH A PRIVATE REMEDY FOR MONEY DAMAGES**

It is not unambiguously clear that Congress intended §671(a)(9) to confer an enforceable private right. Yet Congressional intent to create a private right of action is the only basis upon which a private right of action may be inferred. To infer such intent there must be "rights creating language," Alexander v. Sandoval, 532 U.S. at 288 (citing Cannon v. Univ. of Chicago, 441 U.S. at 690, n.13 (1979)), that "explicitly confers a right directly on a class of persons that includes the plaintiff," Boswell v. Skywest Airlines, Inc., 361 F.3d at 1267 (10th Cir. 2004) (quoting Cannon v. Univ. of Chicago, 441 U.S. at 690 n.13, 688 n.9 (1979) (internal quotation marks omitted)). The language of § 671(a)(9) does not confer a right because "[u]nlike the individually focused terminology of Titles VI and IX ('No person . . . shall . . . be subjected to discrimination')," Gonzaga University v. Doe, 536 U.S. at 287, the AACWA informs the State on what is required to be eligible for payment under the Act. Section §671(a)(9) "speak(s) only in terms of institutional policy and practice," not "individual entitlement." Id. at 287-88. It is not unambiguously clear the Congress intended to create a private right.

**B.     CONGRESS DID NOT INTEND THAT THE AACWA PROVIDE FOR A PRIVATE REMEDY**

To pursue a claim for damages under § 671(a)(9) of the AACWA, Johnson must establish that the statute creates a private right of action and a private remedy.  See Alexander v. Sandoval, 532 U.S. at  278-79.  Even if Johnson establishes a private right of action, he cannot establish that Congress intended a private remedy.

Johnson has not identified authority that supports an award of money damages under § 671(a)(9) against low-level, individual social workers who allegedly failed to report known or

-20-

suspected instances of child abuse.  Although Johnson has cited cases holding that § 671(a)(9) creates a private cause of action, these cases do not involved claims for money damages by an individual. See, e.g., Brian A. v. Sundquist, 149 F. Supp. 2d at 944; Jeanine B. v. Thompson, 877 F. Supp. at 1270; Marisol A. v. Giuliani, 929 F. Supp. at 672.  Further, there are courts that have specifically denied claims under Section 671 for money damages.  See Timmy S. v. Stumbo, 916 F.2d 312, 316 n. 6 (6th Cir. 1990) ( monetary damages not available under AACWA); Marr v. State, 2002 WL 737651 (D. Me. 2002) (that there is no authority for the proposition that Congress intended Section 42 U.S.C. § 671 to serve as the basis for money damages either directly or pursuant to an action under section 1983).

Massinga was decided before Suter v. Artist M. and the subsequent amendment of AACWA. Although the White decision does not mention Massinga in its discussion of the AACWA claim, from that discussion, the Fourth Circuit indicated that Suter is controlling.  It is reasonable to conclude that Massinga's ruling on the private remedy available under AACWA may no longer be controlling in the Fourth Circuit.

Johnson fails to demonstrate that Congress intended to confer a damage remedy based on § 671(a)(9).  Even if there is a private right of action to enforce §671(a)(9), this Court can not say that Congress unambiguously intended to create a remedy based on §671(a)(9).

III.  **CONGRESS DID NOT INTEND TO CREATE A RIGHT ENFORCEABLE UNDER §1983 FOR §671(a)(9)**

While the Tenth Circuit has indicated that the Court should apply pre-Suter law to determine whether §1983 provides a money damage for a violation of §671(a), the Supreme Court has recently indicated that there is no difference between its §1983 analysis and its private right of action analysis.

-21-

Applying that analysis, there is no private right of action.  And even if the Court applies the <u>Blessing</u> factors, it would also conclude that there is no cause of action.

**A.   CONGRESS DID NOT INTEND THAT THE AACWA PROVIDE FOR A PRIVATE RIGHT.**

The Supreme Court in <u>Gonzaga</u> "rejected the notion that [its] implied private right of action cases [were] separate and distinct from § 1983 cases." <u>Gonzaga University v. Doe</u>, 536 U.S. at 285. The <u>Gonzaga</u> Court explained that "the initial inquiry --determining whether a statute confers any right at all – is not different from the initial inquiry in an implied right of action case." <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 285 (2002).  The Court therefore must determine that Congress "unambiguously" intended to confer individual rights.  As discussed above, this Court has reached the conclusion that Congress did not clearly intend to do so.[5]

**B.   SECTION 671(a)(9) IS TOO VAGUE AND AMORPHOUS FOR A COURT TO COMPETENTLY ENFORCE.**

<u>Gonzaga University v. Doe</u> suggests that this Court need not consider the <u>Blessings</u> factors in determining whether a statutory provision provides an enforceable private right. However, the Court concludes that the Plaintiffs' claim against the individual CYFD Defendants for their violation of the AACWA does not satisfy the three <u>Blessings</u> factors.  Under those factors, the Court must determine whether Congress intended for a right of action to be available under § 671(a)(9) by

---

[5]  The Defendants argue that they cannot be held liable for damages under the AACWA because there was no clearly established legal authority in New Mexico, in the Tenth Circuit or in any other circuit which holds state social workers such as the Defendants liable for monetary damages for violation of 42 U.S.C. § 671(a)(9).  The Defendants assert that they are, therefore, entitled to qualified immunity for the claims made in Count VII.  Because the Court finds that there is no private right of action under the AACWA, either directly or pursuant to § 1983, the Court need not address whether the CYFD Defendants are entitled to qualified immunity on Count VII.  <u>But</u> <u>see</u> Del A. Edwards, 855 F.2d at 1148, 1154.

considering whether Johnson, as Grace's personal representative, is an intended beneficiary of § 671(a)(9); whether the language of § 671(a)(9) is too vague and amorphous to be enforced; and whether § 671(a)(9) creates a binding obligation on the state.

For purposes of this motion, the Court will assume that Grace was an intended beneficiary of the AACWA by virtue of her having been placed in CYFD's legal custody for the purpose of finding her appropriate foster care and, eventually, a safe adoptive home.  See Amended Complaint ¶¶ 11, 12, at 2.  The Court will also assume that Johnson has pleaded sufficiently allegations to satisfy the third factor, that the AACWA reflects a binding obligation on the governmental unit involved. Assuming without deciding that the first and third elements of Blessings analysis are met, the Court need only decide whether §671(a)(9) is too "vague and amorphous" for the court to enforce it.

Johnson contends that this § 671(a)(9) is stated in clear, specific terms that set forth a mandatory requirement that State plans provide for the reporting of "known or suspected instances of physical or mental injury, sexual abuse or explanation, or negligent treatment or maltreatment of a child receiving aid . . . ."  § 671(a)(9).

Upon comparison with other provisions that courts have found unenforceable, the Court does not see any substantial difference between the language used in § 671(a)(9) and the language in § 671(a)(10), which the Tenth Circuit has held to be vague and amorphous. In Yvonne L. v. N.M. Dep't Human Servs., the Tenth Circuit concluded that § 671(a)(10) did not support a cause of action, because its requirement that the state agency provide care in foster homes "which are reasonably in accord with recommended standards of national organizations. . ." was too vague and amorphous to be judicially enforced. Yvonne L. v. N.M. Dep't Human Servs.,  959 F.2d at 889. In Whitley v. N.M. Children, Youth & Families Dept., Judge Smith held that "[t]he language of Sections 671(a)(16) and

-23-

(22) . . . [was] similar to the language of § 671(a)(10)." <u>Whitley v. N.M. Children, Youth & Families</u> <u>Dept.</u> 184 F. Supp. 2d at 1165.

The language of §671(a)(9) is not substantially different than that used in § § 671(a)(10), (16), and (22). Judge Black in <u>Pearcy v. Douglas</u>, which found a private right of action, conceded that the terms of §671(a)(9) are not absolutely precise. The state agency has discretion in determining what agency or official is appropriate. Again, while Judge Black did not think the alleged abuse in <u>Pearcy v. Douglas</u> presented inordinately complicated issues, in this case, they were difficult issues. Experts at courts have disagreed whether Grace died of child abuse. Two juries have now decided difficult factual issues, but Terry Bogey pled guilty to child abuse. The central issue in the case is whether the abuse the home nurse alleged threatened Grace's heath and welfare.

While Judge Black did not anticipate extraordinary difficulty in determining whether an agency to which the Defendants may have reported known or suspected abuse was "appropriate" within the meaning of §671(a)(9), here the social workers referred the home nurse to a central intake system. The Plaintiff contends that referral to the central intake system was inadequate. Section 671(a)(9) does not give the Court guidance how to determine whether referral to a central intake system - - which is not used in all states - - is appropriate, or whether a referral to the key social workers was sufficient. Section 671(a)(9) also does not address the need to bring in law enforcement. Second, the state need not report instances of abuse if circumstances do not indicate that the child's health or welfare is threatened. Thus, the federal court would be making up a number of standards to enforce these rules. Congress has not given the Court discernible guidance regarding enforcing a number of key issues.

**C.      SECTION 671(d)(3)(A) PROVIDES ANOTHER BASIS FOR CONCLUDING**

**THAT CONGRESS DID NOT UNAMBIGUOUSLY INTEND TO CREATE A PRIVATE CAUSE OF ACTION FOR § 671(a)(9).**

The Defendants argue that there is evidence that Congress intended to foreclose a private cause of action based on §671(a)(9).  The Defendants attempt to demonstrate such Congressional intent by their reliance on 42 U.S.C. § 674(d)(3)(A), which states: " Any individual aggrieved by a violation of Section 671(a)(18) of this title by a State or other entity may bring an action seeking relief from the State or other entity in any United States District Court."  The Defendants argue that, because Congress chose to specifically provide for a private cause of action pursuant to § 671(a)(18), it must have intended that the other State plan elements under § 671(a) not confer enforceable rights.  See Charlie H. v. Whitman, 83 F. Supp. 2d  at 489 ("That Congress recently chose to amend 42 U.S.C. § 674 to include a private right of action  under § 1983 for a state or other entity's failure to comply with 42 U.S.C. § 671(a)(18), but did not include the other various  elements enumerated in 42 U.S.C. § 671(a) and relied upon by Plaintiffs, is strong evidence that Congress did not intend these other various State plan elements in 42 U.S.C. § 671(a) to confer rights enforceable pursuant to § 1983.").

Johnson points out that other courts have considered whether the provisions of Section 671(a) confer a private right of action without regard to Section 674(d)(3)(A).   See Brian A. v. Sundquist, 149 F. Supp. 2d at 948-49 (finding § 671(a)(10) creates a private right of action for enforcement without consideration of § 674(d)(3)(A)).  See also Joseph A. v. Ingram, 275 F.3d 1253, 1264 (10th Cir. 2002) (observing that § 674(d)(3)(A) "simply allows an individual aggrieved by adoption related discrimination to bring a suit in federal court . . . and places no limits on what would be available under Ex parte Young" in an action seeking prospective equitable relief against a state official regarding a state's obligation to provide child welfare services under statutory law including the AACWA).  Johnson also argues that the court's analysis in  Charlie H. is flawed in that it fails to consider that §674(d)(3)(A) must be read together with § 1320a-2. Johnson contends that the court's interpretation  of § 674(d)(3)(A) in Charlie H. would improperly render § 1320a-2 superfluous.  See Oxy USA, Inc. v. Babbitt, 268 F.3d 1001, 1006 (10th Cir. 2001) (stating that courts must avoid, " wherever possible, a statutory interpretation that would render superfluous other provisions in the same enactment") (quotation omitted); Lamb v. Thompson, 265 F.3d 1038, 1051 (10th Cir. 2001) (reiterating the "cardinal principle that it is our duty to give effect, if possible, to every clause and

-25-

word of a statute rather than to emasculate an entire section") (quotations and alteration omitted).

Johnson contends that the language of § 1320a-2 regarding "an action brought to enforce a provision

of this chapter," which "is not to be deemed unenforceable because of its inclusion in a section of this

chapter requiring a State plan or specifying the required contexts of a State plan," would be

surplusage if Congress intended § 674(d)(3)(A) to preclude the enforcement of any other State plan

requirement under Section 671(a). Johnson contends that a more persuasive interpretation of §

674(d)(3)(A) is that Congress intended to establish with absolute certainty that a private enforcement

action is available for the important anti-discrimination policies underlying § 671(a)(18) so that courts

would not have to resort to the  Wilder  analysis in those cases.

While the Court believes that Johnson may have the better argument that §674(d)(3)(A) does

not evidence congressional intent to foreclose a private cause of action for § 671(a)(9), §

674(d)(3)(A) is some evidence that Congress did not intend to create a private right of action for

§671(a)(9). Congress demonstrated that it wanted to create a private right of enforcement for §

671(a)(18) by including § 674(d)(3)(A) in the Act. Because Congress chose not to include a

corresponding enforcement provision for §671(a)(9), it is unclear whether Congress intended

§671(a)(9) to be privately enforceable. This Court, therefore, can not conclude that Congress

unambiguously conferred a right enforceable under §1983.

Johnson has failed to demonstrate that §671(a)(9) unambiguously confers either a implied

private right of action or a private right enforceable under §1983.

### D.  THE SUPREME COURT OF THE UNITED STATES STATED IN SUTER V. ARTIST M. THAT § 671(a)(9) DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION.

While no party argues that Suter v. Artist M. is dispositive of the question before the Court,

the Court is reluctant to disregard the holding in Suter § 671(a)(9) does not create a private right of

actio. Congress did not directly overturn the Supreme Court's holding on §671(a)(9).

IT IS ORDERED that the CYFD Defendants Holmes, Perez, Encinias, Bowman and

Narvaez' Motion to Dismiss Count VII is granted. The Court will dismiss Count VII with prejudice

and enter judgment on it for the CYFD Defendants and against the Plaintiffs.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Paul Kennedy
Mary Y.C. Han
Adam S. Baker
Kennedy & Han, P.C.
Albuquerque, New Mexico

> *Attorneys for the Plaintiffs*

*Tim Flynn-O'Brien*
*Bryan & Flynn-O'Brien*
*Albuquerque, New Mexico*

> *Attorneys for Defendants* Lydia R. Saenz, Bonnie Vehstedt,
>     Karen Zarate & Virginia Villarreal

Randolph B. Felker
Felker, Ish, Ritchie & Geer, P.A.
Santa Fe, New Mexico

> *Attorneys for Defendants Sonia Perez Sanchez and Anne Holmes*

Michael Dickman
Law Office of Michael Dickman
Santa Fe, New Mexico

> *Attorneys for Defendant New Mexico*
>     *Children Youth and Families Department*

Jerry A. Walz
Anthony (T.J.) J. Trujillo
Walz and Associates
Cedar Crest, New Mexico

> *Attorneys for the Defendants Veronica Bogey*
>     *and Terry Bogey*